

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-20-2004

# Savage v. DA Philadelphia Cty

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4445

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Savage v. DA Philadelphia Cty" (2004). *2004 Decisions.* Paper 204.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/204

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4445
_____

CHRISTOPHER SAVAGE
                                        Appellant,

v.

THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA,
LYNNE ABRAHAM; THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA, *GERALD J. PAPPERT; HARRY WILSON, SUPERINTENDENT,

*(Amended Per the Clerk's Order dated 6/24/04)
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(Civ. A. No. 02-7854)
District Judge: Honorable Stewart Dalzell
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 28, 2004
_____

Before: ROTH, BARRY, and GARTH, <u>Circuit</u> <u>Judges</u>

(Filed: October 20, 2004)

OPINION

Garth, <u>Circuit</u> <u>Judge</u>:

Christopher Savage brought this habeas corpus action under 28 U.S.C. § 2254, asserting violations of his Sixth and Fourteenth Amendment rights to confrontation and compulsory process. Applying the deferential standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the District Court denied Savage's Petition. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We will affirm.

**I.**

Because we write exclusively for the benefit of the parties who are well acquainted with the facts and procedural posture of the present action, we will recount only those matters relevant to the issues before us. On July 15, 1998, a jury in the Philadelphia County Court of Common Pleas found Savage guilty of possession of a controlled substance with intent to deliver. Savage had been arrested on the evening of December 27, 1995 in the course of a narcotics surveillance operation by Philadelphia Housing Authority ("PHA") police officers Kevin Muldrow and Darrin DelViscio, with back-up assistance from PHA officers Michael Duross and Fred Pantalone. Duross did not testify at trial, but the Commonwealth called Muldrow, DelViscio, and Pantalone.

According to their testimony, Muldrow and DelViscio observed Savage for ten or fifteen minutes as he walked back and forth between a takeout shop and a housing project on opposite sides of the street. The officers then witnessed an unknown black male approach Savage, after which the two conversed and the man handed Savage money.

Upon taking the money, Savage retrieved a tinfoil bundle of what the officers assumed was PCP from alongside the wall of a house on the corner of the intersection. Savage then crossed back to the other side of the intersection, passed the bundle to the unknown male, and entered the takeout shop.

At this point, Muldrow radioed his backup officers, Pantalone and Duross, who approached the scene in a police car. When the officers called to Savage as he exited the takeout shop, Savage fled, and the officers gave chase. A few moments later, Pantalone apprehended Savage.

The jury heard a different version of the events from Savage, who took the stand in his own defense. According to Savage, he had gone to the takeout shop to purchase a sandwich during a Christmas visit with his young children and their mother, who lived nearby. While the sandwich was being made, he stepped outside the shop and saw Duross and Pantalone approach a man standing on the corner. When the man fled, Duross pursued the man, and Pantalone remained behind to question Savage. Savage told Pantalone that he was waiting for his sandwich and did not know the fleeing man. Soon thereafter, Duross returned empty-handed and began to interrogate Savage. When Savage again stated that he did not know the man, Duross allegedly said, "You will know him when I take you down to the station." Duross then grabbed Savage by the shoulder, which caused Savage to panic and run away. Giving chase, Duross–not Pantalone–ultimately apprehended him.

At trial, the defense maintained that Duross had arrested Savage because he had

bungled the arrest of the true culprit and that Muldrow, Pantalone, and DelViscio were covering for Duross's inept and corrupt conduct. To bolster this theory, Savage sought to call Duross as a defense witness, elicit his account of the arrest, and then question him on his disciplinary history at the PHA, which included three incidents of misconduct in former drug cases. First, in 1997, just six months prior to Savage's trial, Duross testified under a grant of immunity before a federal grand jury that he fabricated the details of a narcotics arrest in April of 1997. Second, Duross was found guilty in a disciplinary hearing for lying about the facts of a different narcotics arrest, resulting in a five-day suspension. Third, Duross was sued in federal court, along with other PHA officers, for lying about the recovery of narcotics in a 1993 arrest.

In further support of the conspiracy theory, Savage also sought to cross-examine the three testifying officers on their awareness of Duross's disciplinary record. The Commonwealth filed a motion in limine to preclude Savage from examining any of the officers on Duross's record. Noting that there was no apparent connection between Duross's misconduct and the case at bar, the trial judge applied Pennsylvania's common law impeachment rule[1] and held that Savage was free to call Duross as a witness but could not then impeach him with his disciplinary history.[2] The trial judge deferred ruling

---

[1]Pa. R. Evid. 607(a), which took effect after Savage's trial, abolished the common law rule that prohibited a party from impeaching his own witness. *See Commonwealth v. Kimbell*, 759 A.2d 1273, 1276 n.3 (Pa. 2000).

[2]Savage argued that the common law impeachment rule was not applicable because he was not attempting to impeach Duross, but rather seeking to present substantive evidence through his testimony. We note that this appeal solely concerns the trial court's exclusion of Duross's testimony as *substantive* evidence.

on whether Savage could question Muldrow, Pantalone, and DelViscio on their awareness of Duross's record, but when the defense attempted to cross-examine Muldrow on this issue and the Commonwealth objected, the judge ruled in the Commonwealth's favor.

Savage argued on direct appeal and in his habeas petition that the trial judge improperly limited his cross-examination of three government witnesses and precluded him from presenting substantive evidence of the arresting officer's record of similar fabrications, thereby depriving him of his constitutional rights under the Sixth and Fourteenth Amendments. The District Court denied the petition, but granted Savage's request for a certificate of appealability. This appeal followed.

## II.

At the outset, we must determine the appropriate standard of review, an inquiry which takes on particular importance given that the District Court considered it to be all but outcome-determinative. Under the AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d). Thus, insofar as Savage's claims were rejected on the merits by the Superior Court, under the AEDPA he may be granted habeas relief only if the decision was "contrary to, or involved an unreasonable application of," clearly established federal

law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).[3]

Savage argues, however, that because the Pennsylvania Superior Court cited only Pennsylvania law with no reference to federal law, this court need not apply the AEDPA's deferential standard of review. In so arguing, Savage relies heavily on this court's decision in *Everett v. Beard*, which held:

> The AEDPA standard of review does not apply unless it is clear from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in light of federal law as established by the Supreme Court of the United States.

290 F.3d 500, 507-08 (3d Cir. 2002). In *Everett*, the state court discussed only state cases in rejecting a federal constitutional claim. In this case, too, the Superior Court cited only to state law in adjudicating the constitutional claims, which, Savage contends, places this case squarely within the holding of *Everett*, thereby compelling this court to apply a *de novo* standard of review.

The difficulty with Savage's position is that subsequent opinions of the Supreme Court "have made clear that as long as the reasoning of the state court does not contradict relevant Supreme Court precedent, the AEDPA's general rule of deference applies." *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004) (citing *Early v. Packer*, 537 U.S. 3

---

[3]As Savage has not attempted to argue that the Superior Court's determination was "contrary to" federal law, this case only involves the "unreasonable application" clause. In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that the "unreasonable application" clause refers to a state court decision that "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 412-13. It is not enough for a petitioner to show that the state court's application of federal law was incorrect; he must also show that it was unreasonable. *Id.* at 411.

(2002); *Woodford v. Visciotti*, 537 U.S. 19 (2002)). In *Early*, for instance, the Supreme Court held that qualification for AEDPA deference "does not require citation of our cases--indeed, it does not even require <u>awareness</u> of our cases, so long as neither the reasoning nor the result of the state court decision contradicts them." *Early*, 537 U.S. at 8; *see also Woodford*, 537 U.S. at 23-24 (holding that state court's "shorthand reference" to ineffective assistance of counsel standard, though imprecise, did not render decision unworthy of deference); *Bell v. Cone*, 535 U.S. 685, 698 (2002) (applying deferential AEDPA standard of review where state court had relied only on its own precedent to reject petitioner's ineffective assistance of counsel allegation); *Rompilla v. Horn*, 355 F.3d 233, 250 (3d Cir. 2004) (applying AEDPA deference to Pennsylvania court's determination of ineffective assistance of counsel allegation despite court's failure to expressly cite to *Strickland* standard).

The question, then, is not whether the Superior Court cited to federal cases in adjudicating Savage's constitutional claims. Rather, the question is whether the reasoning of the Superior Court is consistent with federal law. *See Priester*, 382 F.3d at 398. The Superior Court determined that because there was "no connection between the prior arrests and the instant case," it could not say that the "evidence if admitted would have resulted in a different verdict." *Commonwealth v. Savage*, No. 2358 Phila. 1998, mem. op. (Pa. Super. Nov. 30, 1999) (citing *Commonwealth v. Robinson*, 554 Pa. 293, 305 (1999) (finding error will be deemed harmless where it could not have contributed to verdict)). In other words, the Superior Court focused on the relevancy of the evidence, a

crucial element in ascertaining a Confrontation or Compulsory Process Clause infraction, and applied a harmless error standard, which is the same standard that governs violations under both clauses. *See Crane v. Kentucky*, 476 U.S. 683, 691 (1986) (harmless error applies to Compulsory Process claim); *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (harmless error applies to Confrontation Clause claim). As such, there is no contradiction with Supreme Court precedent, and the AEDPA's standard of deference is applicable.

## III.

We turn first to Savage's claim that the trial court violated his federal constitutional rights to confrontation and due process by precluding any cross-examination of the three testifying officers into their knowledge of Duross's disciplinary history.

The Sixth Amendment guarantees the criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. At the core of the Confrontation Clause is the right of every defendant to test the credibility of witnesses through cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).

But notwithstanding the vital role cross-examination can play in casting doubt on a witness's credibility, not all conceivable methods of undermining credibility are constitutionally guaranteed. As the Supreme Court has made clear, "[i]t does not follow . . . that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution

witness." *Van Arsdall*, 475 U.S. at 679. On the contrary, a trial court retains the discretion to limit the scope of cross-examination. *Id*. This includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *Id*. In this way, the Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

The analysis here thus focuses on whether the constraints the trial court imposed on the scope of Savage's cross-examination fell within those "reasonable limits" which a trial court, in due exercise of its discretion, has authority to establish. *See United States v. Chandler*, 326 F.3d 210, 219 (3d Cir. 2003). Governed by the foregoing principles, and in light of the AEDPA's deferential review, we conclude that the state court's limitation of Savage's cross-examination passes constitutional scrutiny.

Savage argues that he had the right to explore the testifying officers' familiarity with Duross's history of misrepresentations and fabrications in narcotics arrests, which, in turn, could raise a strong inference that they crafted their testimony so as to minimize and legitimize his role in Savage's arrest. We are unconvinced for two principal reasons. First, the trial judge did not preclude all inquiry into the testifying officers' bias or motives. *Compare Van Arsdall*, 475 U.S. at 679 (noting that trial court prohibited all inquiry into possibility that prosecution witness would be biased as a result of State's dismissal of his pending public drunkenness charge); *United States v. McNeill*, 887 F.2d

448, 453-54 (3d Cir. 1989) ("In resolving the tension between the admissibility of evidence under the bias theory and the inadmissibility of the same evidence under the character theory, it is significant that the court permitted defendant to introduce evidence intended to impeach [the witness] by other means."). To the contrary, the trial court afforded Savage the opportunity to examine the testifying officers about their possible motive to lie to protect Duross and themselves. Moreover, defense counsel argued to the jury that the four officers conspired together to fabricate the arrest.

Second, Savage's calculus ignores the tension between the admissibility of evidence under a bias theory and the inadmissibility of the same evidence under a character theory. The power of courts to exclude evidence through the application of evidentiary rules that serve the interests of fairness and reliability is well settled. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Crane*, 476 U.S. at 690 ("[W]e have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability--even if the defendant would prefer to see that evidence admitted."). The inference the jury would be asked to draw in this case is that because Duross previously gave false testimony about the facts of a narcotics possession arrest on prior occasion(s), he fabricated Savage's arrest, thus creating a reason or motive for the testifying officers to falsify their own testimony to protect both Duross and themselves. It is clear that both the state and federal rules of evidence reflect a general reluctance to draw the inference that because a person may have acted wrongfully on one occasion, he also acted wrongfully on the occasion at

issue. *See Pa. R. Evid.* 404(b); *Fed. R. Evid.* 404(b). The fact that Savage presents no

evidence, apart from his own testimony, to support his contention that Duross had

bungled the pursuit of the true perpetrator, falsely arrested Savage, and then inveighed the

other officers to cover up his misdeeds further attenuates the inference to be drawn.

Indeed, this case would seem to present a prototypical example of the likely confusing,

prejudicial and speculative nature of propensity evidence.

Whether the trial court's determination is framed in terms of relevancy or the

inadmissibility of propensity evidence, it is clear that the trial court was acting well within

its discretion in excluding such evidence.[4] Accordingly, we hold that the Superior Court,

in rejecting Savage's Confrontation Clause claim, did not unreasonably apply the

Supreme Court's Sixth Amendment jurisprudence.

### IV.

We next address Savage's claim that the trial court violated his federal

constitutional right to compulsory process by precluding him from presenting substantive

evidence of Duross's disciplinary history.[5]

---

[4]It is also of no consequence that Savage's purported cross-examination of the testifying officers involved impeachment, not substantive, evidence. That fact does not eliminate the evidentiary concerns underlying the general prohibition of propensity evidence. Inasmuch as Savage sought to introduce Duross's disciplinary history as substantive evidence–as proof that because Duross committed misconduct in other cases, he did so in this case–his purported cross-examination of the testifying officers about Duross's disciplinary history could be reasonably viewed as a thinly-veiled attempt to introduce otherwise improper propensity evidence.

[5]While Savage also argues that the trial court's ruling denied him due process of law, this court has previously pointed out that "[t]here is apparently little, if any, difference in the analysis." *Government of Virgin Islands v. Mills*, 956 F.2d 443, 445 n.4 (3d Cir. 1992). Accordingly, we review Savage's claim under the Compulsory Process Clause.

The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *See Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988); *Chambers*, 410 U.S. at 294. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers,* 410 U.S. at 302 (citing, *inter alia*, *Webb v. Texas*, 409 U.S. 95 (1972)). The right is not, of course, unlimited; the defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability." *Id.*; *see also Taylor*, 484 U.S. at 410 ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."). Of particular import here, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. That said, state evidentiary rules cannot be inflexibly applied in such a way as to violate fundamental fairness. *See Chambers*, 410 U.S. at 299-302.

We have previously stated that the Compulsory Process Clause "protects the presentation of the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling from the trial judge." *Government of Virgin Islands v. Mills*, 956 F.2d 443, 445 (3d Cir.1992). In *Mills*, we established a three-prong test for determining whether a limitation on the right to present witnesses rises to the level of a constitutional

violation:

> First, that [defendant] was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose.

*Mills*, 956 F.2d at 446.

Applying this test to the present case, we reject Savage's argument because the ruling of the trial court was not "arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." *Id.* Although the precise contours of the trial court's ruling are somewhat ambiguous, it is clear that the trial court's exclusion of the evidence of Duross's disciplinary history, both for substantive and impeachment purposes, constituted the type of ordinary evidentiary ruling typically immune from constitutional error. The trial court's evidentiary ruling was based, at least in part, on a concern that the evidence concerned events and arrests unrelated to Savage's case, with all the implications that the admission of such evidence may have entailed. As explained above, the Constitution gives trial judges discretion to exclude evidence that is "only marginally relevant," or that poses an undue risk of "harassment, prejudice, or confusion of the issues." *Van Arsdall*, 475 U.S. at 679; *see also Crane*, 476 U.S. at 689. Here, the trial court found that due to, among other things, the lack of evidence or "connection" between the proffered evidence and Savage's particular case, the evidence was properly excluded. A72-73. While the relevancy of the evidence might be subject to reasonable disagreement, that is not enough to sustain Savage's burden under the AEDPA.

In addition, notwithstanding the debatable relevancy of the proffered evidence, the

admissibility of such evidence is also highly questionable for a different, though related, reason, at least insofar as defense counsel sought to introduce the prior bad acts as substantive evidence to corroborate Savage's testimony. The rule barring propensity evidence provides an additional layer of legitimacy to the trial court's evidentiary ruling. *See Pa. R. Evid.* 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); *Fed. R. Evid.* 404(b) (same). Clearly, then, the trial court was not acting arbitrarily in barring the introduction of Duross's disciplinary history for substantive purposes.

Savage, however, relies on the Supreme Court's decisions in *Chambers v. Mississippi* and *Crane v. Kentucky* for the proposition that the mechanical application of state evidentiary rules transgresses the constitutional limits of judicial discretion in evidentiary matters. A review of those cases, however, reveals that the Supreme Court was concerned about the draconian application of state evidentiary rules in contravention of the basic constitutional guarantees to procedural fairness, something which is entirely absent from this case. *See Chambers*, 410 U.S. at 302 (holding that trial court's mechanical application of the hearsay rule to exclude testimony by defense witnesses about exculpatory confessions, "coupled with the State's refusal to permit [defendant] to cross-examine [witness who had confessed to the crime charged], denied him a trial in accord with traditional and fundamental standards of due process"); *Crane,* 476 U.S. at 691-92 (holding that a defendant must be permitted to present evidence in his defense, even where that evidence pertained to an issue that was resolved against the defendant in

a pre-trial ruling).

This case does not involve the exclusion of compelling exculpatory evidence, nor does it involve the "blanket exclusion" of categories of evidence based on an arbitrary or disproportionate application of state evidentiary rules. To be sure, the exclusion of a confession is far different than the exclusion of prior bad acts of a non-testifying witness, the relevancy of which is, at best, subject to reasonable disagreement.

In addition, the type of evidentiary ruling challenged in this case–the relevancy of Duross's disciplinary history–is afforded wide latitude by the Constitution. *See Crane*, 476 U.S. at 689 (noting the "traditional reluctance to impose constitutional constraints" upon such "ordinary evidentiary rulings by state trial courts" concerning the admissibility of evidence). In *Chambers*, moreover, the Court emphasized that it was establishing no new principles of constitutional law and limited its holding to the facts and circumstances of the case before it. 410 U.S. at 302-03. Of particular relevance here, the Court stated that "*Chambers* therefore does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." *United States v. Scheffer,* 523 U.S. 303, 316 (1998).

## V.

Applying the AEDPA's deferential standard in reviewing Savage's petition, we hold that the state court did not err in limiting the scope of cross-examination and precluding Savage from presenting substantive evidence of Duross's disciplinary history. The District Court's denial of Savage's habeas petition will therefore be affirmed.