# GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

## v.

# PAUL MILLS, Appellant

No. 91-3493

United States Court of Appeals
for the Third Circuit

February 12, 1992

THURSTON T. MCKELVIN (argued), Federal Public Defender, St. Thomas, V.I., *for appellant*

TERRY M. HALPERN, United States Attorney, AUDREY THOMAS–FRANCIS, Assistant United States Attorney, SUSAN R. VIA, Assistant United States Attorney, KIM L. CHISHOLM (argued), Special Assistant United States Attorney, CHARLOTTE AMALIE, V.I., *for appellee*

BEFORE: STAPLETON, HUTCHINSON and NYGAARD, *Circuit Judges*

## OPINION OF THE COURT

NYGAARD, *Circuit Judge*

Appellant Paul Mills was convicted of Third Degree Burglary and Grand Larceny. The district court sentenced Mills to the mandatory minimum sentence of ten years pursuant to the habitual criminal statute since he had been convicted of a felony in 1988. The issue on appeal is whether Mills' Sixth Amendment right to Compulsory Process was violated when the district court refused to allow a material witness to testify at Mills' trial. We conclude that it was and will reverse the district court's Order of Judgment and Commitment and remand for a new trial.

## I.

Janet Ellison, a tourist visiting the Virgin Islands, returned to her room at the Virgin Isles Hotel at around 10 p.m. She found that it had been ransacked and she saw a man fitting Mills description in the room with a large bag under his arm. She exchanged words with him and he ran from the room. Mills was arrested soon after. Ellison identified Mills twice after the incident: in a photo-array at the police station, and at Mills' trial.

Only one other witness, a hotel security guard named Maurice Maynard, placed Mills near the scene of the crime. Maynard told the police that he encountered a man fitting Mills description in a hallway of the Virgin Isles Hotel several seconds after being summoned to Ellison's room. When he asked the person his name, the person replied "Gene." Maynard picked Mills' photo out of a police photo album.[1]

On the evening of the burglary, Maynard spoke with several people living in a shanty town near the Virgin Isles Hotel. After giving a description of the man he saw in the hallway, the shanty dwellers told Maynard that the description fit a local individual known as "Commander." Maynard did not follow up this lead, nor did he tell the police about "Commander."

Later, during a conversation with David Jackson, an investigator for the Federal Public Defender, Maynard told Jackson that his identification of Mills from the photo volume was probably not correct. Maynard told Jackson about "commander" and described the man he saw in the hallway as small. Maynard did not tell the police or the U.S. Attorney that he believed his statement to be inaccurate. Maynard left his job as a security guard and moved to Florida to attend college.

Mills was charged in a two count information with Third Degree Burglary, 14 V.I.C. § 444, and Grand Larceny, 14 V.I.C. § 1083(1). The U.S. Attorney subpoenaed Maynard to testify at Mills' trial. Mills also subpoenaed Maynard after he learned that Maynard's identification testimony may be inconsistent with his statement to

---

[1] It appears that the photo selected by Maynard at the police station was a black and white "mugshot" photo. As we shall discuss further, Maynard's proffered change in identification of Mills was based on the fact that Mills was much taller and of larger build than the man Maynard saw in the hallway of the hotel. In addition, it was proffered that the man seen in the hallway had a hat covering his face—information not in Maynard's original statement.

the police.[2] Maynard voluntarily travelled to the Virgin Islands at his own expense to testify at Mills' trial. Unfortunately, Mills' trial was postponed for two weeks. Before returning to Florida, Maynard warned the U.S. Attorney that it would be difficult for him to return in two weeks because he had college examinations scheduled. Maynard refused to return to the Virgin Islands on the day before Mills' trial and the U.S. Attorney issued a warrant. He was arrested in Florida and taken to the Virgin Islands by the U.S. Marshal's Service.

At his trial, and after all other government witnesses testified, the U.S. Attorney called Maynard. Maynard took the witness stand but refused to testify.[3] The district court questioned Maynard why he was refusing to testify and why he should not be held in contempt. Maynard's reasons were unsatisfactory and the district court found him in contempt of court and remanded him to the custody of the Marshal's Service.

With Maynard unwilling to testify, the U.S. Attorney and the Federal Public Defender entered into an evidentiary stipulation. They stipulated that Maynard's original written statement to the police would be entered into evidence, but that Mills would be allowed to call investigator Jackson to impeach Maynard's statement.

Unknown to either party, Maynard had told the U.S. Marshals, within minutes after he was taken from the courtroom, that he was willing to testify and that he regretted his behavior on the witness stand. The Marshals immediately told the court. Notably, Maynard told the U.S. Marshals that he was willing to testify that Mills, the defendant in the courtroom, was *not* the man Maynard saw in the hallway of the Virgin Isles Hotel. Indeed, Maynard said that Mills was much larger physically than the person he had seen. This new testimony would contradict his written statement to the police and his identification from the photo album, and in addition would add

---

[2] In view of the potentially exculpatory evidence proffered by Maynard, we treat him as a witness for the defense.

[3] Maynard told the district court that the government gave him 24 hours notice that he was to return to the Virgin Islands, despite college examinations scheduled for the same day as the trial. According to Maynard, when this 24 hour period passed, the U.S. Marshal arrested Maynard at work, stripped him, placed him in a cell with two convicted felons, did not allow him to make a telephone call, and did not feed him for two days.

new evidence beyond Maynard's statements to investigator Jackson and would contradict the only other eyewitness, Ellison.

The court did not tell the parties that Maynard was willing to testify. Maynard's original statement was produced at trial and the investigator was called as an impeachment witness.

The jury returned a guilty verdict on both counts. The district court sentenced Mills to a mandatory ten years imprisonment under the habitual offender statute because Mills had a prior felony conviction. 14 V.I.C. Ann. § 61(a) (Supp. 1988). The district court sentenced Maynard to five days imprisonment for contempt.

Mills immediately moved for a new trial and requested an evidentiary hearing to record the testimony of Maynard. Mills made a complete proffer of Maynard's new testimony. The district court denied the motions for a new trial and an evidentiary hearing.

Mills claims that his Sixth Amendment right to the compulsory process of favorable witnesses was violated because Maynard was willing to offer new, material, and favorable evidence. Mills claims that Maynard's testimony would tend to exculpate him because, rather than to merely refute his original identification, Maynard would testify that Mills was not the man whom he encountered in the hallway after the burglary. Hence, Mills argues that he was greatly prejudiced by being forced to rely on the evidentiary stipulation.

## II.

■■ The Sixth Amendment to the United States Constitution provides the accused in a criminal prosecution the right to offer the testimony of favorable witnesses and "to have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. The Supreme Court has extended the Compulsory Process clause to cover a criminal defendant's right to present witnesses or evidence in his defense, "even though [such a right] is not expressly described in so many words." Taylor v. Illinois, 484 U.S. 400, 409, 108 S.Ct. 646, 652, 98 L.Ed.2d 798 (1988); Pennsylvania v. Ritchie, 480 U.S. 39, 56, 107 S.Ct. 989, 1000, 94 L.Ed.2d 40 (1987) ("Our cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."). Thus, the fundamental right of an accused to present witnesses in his own defense

is an essential attribute of our adversary system of justice. Taylor v. Illinois, 484 U.S. at 408, 108 S.Ct. at 652; Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973).

■ The Compulsory Process clause protects the presentation of the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling by the trial judge.[4] In Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court sustained a Compulsory Process clause challenge to a state evidence rule which prohibited accomplices from testifying on behalf of each other, but allowed them to testify for the state because the rule arbitrarily denied the defendant the right to present a witness who was both mentally and physically capable of testifying about events that he had personally observed, and whose testimony would have been relevant and material to the defense. 388 U.S. at 22–23, 87 S.Ct. at 1924–25. See also Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) (accused denied fair trial when hearsay rules mechanistically applied to preclude exculpatory testimony); Bennett v. Scroggy, 793 F.2d 772, 776–77 (6th Cir.1986) (Compulsory Process clause violated when trial court arbitrarily refused to grant overnight continuance to allow defendant to secure a favorable witness that constituted defendant's only defense); United States v. Morrison, 535 F.2d 223, 227–28 (3d Cir. 1976) (Compulsory Process clause violated where conduct by the government forced defense witness to decline from testifying).

---

[4] Some courts, when faced with similar circumstances, have analyzed the issue presented under the due process clause rather than the compulsory process clause. There is apparently little, if any, difference in the analysis. See, e.g., Ritchie, 480 U.S. at 56, 107 S.Ct. at 1000; Allen v. Morris, 845 F.2d 610, 615 n. 5 (6th Cir.1988) ("Although this right has its origins in the Sixth Amendment's right to compulsory process, since its incorporation into the Due Process Clause of the Fourteenth Amendment . . . it has been analyzed by most courts without reference to the Sixth Amendment."); Cikora v. Dugger, 840 F.2d 893, 897 n. 4 (11th Cir.1988) ("[W]e believe that the standards for assessing the sixth amendment violation and a violation of due process itself are identical in the context—a challenge to a trial court ruling excluding evidence or testimony."); United States v. Ismaili, 828 F.2d 153, 171 n. 4 (3d Cir.1987) (Becker, J., dissenting) ("Essentially both guarantees insure a defendant the right to present a defense.")

■ But the right is not absolute. The Sixth Amendment requires more than a mere showing by the accused that some relevant evidence was excluded from his trial. Rather, the accused must show how that testimony would have been both *material* and *favorable* to his defense. United States v. Valenzuela–Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). In Valenzuela–Bernal, the Court imported the materiality requirement from the line of cases beginning with Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) into compulsory process clause analysis. Following this line of cases, the Court concluded that evidence is material: "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." Valenzuela–Bernal, 458 U.S. at 874, 102 S.Ct. at 3450. See also United States v. Bagley, 473 U.S. 667, 681, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (citing Valenzuela–Bernal and adopting the "reasonable probability" test of materiality for Brady violations). In Bagley, the Court further refined the materiality definition by noting that, "[a] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S.Ct. at 3383.

■ In sum, for Mills to establish that he was convicted in violation of his Sixth Amendment right to compulsory process, he must show: First, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose. Rock v. Arkansas, 483 U.S. 44, 56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987). We conclude that Mills has satisfied this burden.

■ The testimony to be offered by Maynard, and excluded by the court, was new, non-cumulative and favorable. Without Maynard's testimony, the only evidence placing Mills at the scene of the crime was the testimony of Ellison and Maynard's now-refuted statement to the police. While Maynard's written statement may or may not have been discredited by the impeachment testimony of investigator Jackson, it was proffered that Maynard would also have testified that Mills did not match the physical description of the man whom Maynard saw in the hallway immediately after the crime. By excluding Maynard as a live witness, the district court denied Mills the opportunity to present this potentially exculpatory evidence to the jury. See Michigan v. Lucas, — U.S. —, 111

S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991) (to the extent a ruling operates to prevent a criminal defendant from present relevant evidence, the defendant's ability to present a defense is diminished).

■ Next, it is apparent that Maynard's testimony would have been material and favorable to Mills' defense. Apart from Maynard, the only other witness implicating Mills in the burglary was Ellison, whose identification of Mills went unchallenged. Whereas Maynard's written statement alone would have been cumulative and corroborated Ellison's identification, Maynard's live testimony would have been the opposite: it could have served to cast doubt on Ellison's identification. Cf. United States v. Morrison, 535 F.2d at 226–27. We do not speculate about how this delicate balance of evidence will ultimately play out before a new jury. But given the nature of Maynard's proffered testimony, we conclude that in the context of the entire record, such evidence was material and favorable because there is a reasonable probability that it would have affected the judgment of the jury. Valenzuela–Bernal, 458 U.S. at 874, 102 S.Ct. at 3450.

■ Finally, the district court's exclusion of Maynard's testimony was arbitrary and served no legitimate evidentiary or procedural interest. There is no doubt that had the prosecutor concealed Maynard's willingness to testify, it would have committed reversible error. In United States v. Morrison, 535 F.2d at 225, the defendant's sole defense to conspiracy and drug charges was that his girlfriend was the actual perpetrator of the offenses. After the government learned that the girlfriend was under eighteen years of age at the time of the offense, it dropped charges against her. The U.S. Attorney then began a pattern of behavior designed to intimidate her from testifying for the defense. At trial, she answered some questions, but refused to answer several key questions thus depriving the defendant of evidence he had expected to place before the jury. We reversed the conviction on the grounds that the government's completely unnecessary conduct deprived the defendant of a fair trial and infringed upon his right to have the witness' freely-given testimony. We see no reason for any other result where the actor preventing the presentation of important defense evidence was the judge. See Webb v. Texas, 409 U.S. 95, 97, 93 S.Ct. 351, 353, 34 L.Ed.2d 330 (1972) (defendant denied fair trial when trial judge "effectively drove off the stand" sole defense witness through threats and intimidation); Anderson v. Warden, 696

360

F.2d 296, 299 (4th Cir.1982) (Sixth Amendment violated where trial judge pressured alibi witnesses to change their testimony).

Mills' trial is indistinguishable from that of the accused in Pettijohn v. Hall, 599 F.2d 476 (1st Cir.1979), where the U.S. Court of Appeals for the First Circuit issued a writ of habeas corpus because the accused was precluded from calling a key identification witness. In Pettijohn, two persons witnessed a robbery, the victim and an eyewitness, Griffin. Both persons selected Pettijohn's photo from a police photo array, but Griffin's identification was tainted by police misconduct and ruled inadmissible at trial. In fact, Griffin had strong doubts about his initial identification, and Pettijohn offered that Griffin was willing to testify that he, Pettijohn, was *not* the robber. The trial court excluded this testimony, ruling that it was inadmissible because it was not material or relevant. This ruling was apparently based on the mistaken view taken by the trial court that the Griffin's testimony was only being offered to impeach the victim's identification testimony.

The First Circuit overturned Pettijohn's conviction. It held that Griffin's testimony was not merely impeachment evidence, but direct testimony necessary to establish Pettijohn's defense:

> Besides the victim, Griffin was the only eyewitness to the crime. The central issue was one of identification. Evidence that someone other than the defendant was identified as the criminal is not only probative but critical to the issue of the defendant's guilt. (citations omitted) The prior identification could not have been more relevant and material to Pettijohn's defense; he could support his version of the event in no other way. In the context of a criminal trial, the sixth amendment severely restricts a trial judge's discretion to reject such relevant evidence. Exclusion of relevant exculpatory evidence infringes upon the fundamental right of an accused to present witnesses in his own defense.

599 F.2d at 480 (footnote omitted). The Court of Appeals concluded that the trial court erred when it precluded Pettijohn from presenting Griffin's testimony to the jury. As the First Circuit Court of Appeals reasoned, "[t]he right to present such a vital witness [as Maynard] is, at heart, the right to present a defense. No matter how credible this defense, our system of justice guarantees the right to present it and be judged by it." 599 F.2d at 482–83. We agree.

■ Consequently, Mills' Sixth Amendment right to present favorable evidence under the Compulsory Process clause was impinged upon when the district court refused to allow Maynard to testify in person at Mills' trial. The U.S. Attorney argued that the district court's constitutional error was harmless beyond a reasonable doubt. Given our conclusion "that there is a reasonable probability it would have affected the judgment of the jury," Valenzuela–Bernal, 458 U.S. at 874, 102 S.Ct. at 3450, we reject that argument, and conclude the error was indeed harmful. United States v. Morrison, 535 F.2d at 228 (where the government has prevented the defendant's witness from testifying freely before the jury, error cannot be harmless); Pettijohn v. Hall, 599 F.2d at 482 (exclusion of key identification testimony was necessarily harmful error).

## III.

■ We conclude that the defendant Paul Mills was denied his Sixth Amendment right to Compulsory Process when the district court arbitrarily excluded a material and favorable defense witness from Mills' trial. We will reverse the district court's order, vacate the sentence, and remand for a new trial.