OPINION
BARRY, Circuit Judge.
Following a jury trial, appellant Denise Donovan (“Donovan”) was convicted of first degree murder, possession of a dangerous or deadly weapon with the intent to use the same during a crime of violence, and first degree assault with the intent to commit murder.[1] Donovan unsuccessfully challenged her convictions in the Appellate Division of the District Court of the Virgin Islands, and again challenges them here. We will affirm.

Factual Background

On March 11, 2002, Donovan was at work at a local market when she asked if she could borrow her co-worker’s car— something she had never before done. She explained her request by saying that she had to deliver asthma medication to her daughter, and the coworker lent her the car. Around 11:20 a.m., Donovan left work, and returned about fifty minutes later, at 12:10 p.m. Later that afternoon, her shift complete, Donovan left work, this time for the day. At approximately 3:00 p.m., she called the Virgin Islands Police Department stating that her boyfriend, Clayton Laurent (“Laurent”), had been murdered. The police immediately proceeded to Laurent’s home, where they found his body.
Donovan told police that when she arrived at Laurent’s home, she witnessed a struggle between Laurent and a masked man wielding a knife. She claimed that she tried to wrest the knife away from the assailant, but only succeeded in doing so when it was too late: Laurent had been fatally stabbed, and the masked man fled the scene. Donovan’s injuries were minimal, consisting of red marks on her neck and a minor cut on her finger.
An emergency medical technician at the scene noted that Laurent’s body appeared stiff, as if rigor mortis had already begun to set in, and other witnesses testified that the blood on and around the body was dried and clotted. The state medical examiner concluded, after conducting an autopsy and hearing the observations about the stiff body and the dried blood, that the time of death was between 11:21 a.m. and 1:21 p.m. This time of death stands in stark contrast to Donovan’s story and most particularly her claim that the murder occurred moments before 3:00 p.m.
Two days later, Donovan was arrested and charged with the murder. At trial, the government argued that Donovan used the fictitious story about the need to deliver asthma medication as a reason to borrow her co-worker’s car, and thus to disguise her commission of the crime. The government further argued that Donovan murdered Laurent in cold blood, and then developed a cover story with her sister and daughter. That cover story, advanced by the defense at trial, claimed that the sister and daughter saw Laurent around 2:30 p.m., alive and well, picking up chicken from a local restaurant. The jury convicted Donovan on all counts.
*208 Discussion
Donovan asserts that the trial court erred in: (1) not allowing her to put a witness on the stand who would produce medical records showing that her daughter had asthma; (2) admitting character evidence about Laurent and prior bad acts evidence about Donovan, and; (3) admitting a racially-charged statement made by Donovan. The Appellate Division found no error with respect to the exclusion of the medical records witness and the admission of the racially-charged statement, and found that the admission of character evidence about the victim and certain prior bad acts of Donovan was harmless error. We have jurisdiction pursuant to 28 U.s.c. § 1291,. and consider each issue below.
I. Medical Records Testimony
The trial court did not permit the custodian of records at a local hospital to testify and produce medical records showing that Donovan's daughter had asthma. Aside from whether, as the trial court and the government believed, that evidence was a veiled attempt to put on an alibi defense (which Donovan had disclaimed any intent to do), there was no error here. Put simply: the evidence was neither relevant nor material to this case, and was thus properly excluded. See, e.g., Fed. R.Evid. 402; Gov't of the V.I. v. Mills, 956 F.2d 443, 446 (3d Cir.1992). There was testimony that Donovan's daughter had asthma, testimony that was never disputed. The issue, however, was whether Donovan delivered asthma medication to her daughter on the day of the murder. The proffered evidence would have shed absolutely no light on that issue.
IL Gharacter and Prior Bad Acts Evidence
Donovan claims, next, that the trial court erred in admitting testimony concerning Laurent's good parenting and Donovan's prior bad acts. We find no error that would require us to vacate her convictions.
The testimony about Laurent's good character, which largely concerned descriptions of him as a good father to his son, was likely admitted in error as it served no proper evidentiary purpose. Any error, however, was clearly harmless: the few fleeting statements were insignificant and, as discussed at more length infra, the evidence of Donovan's guilt was overwhelming.
Donovan's claim that the trial court erred in admitting testimony concerning her own prior bad acts, particularly testimony about two instances in which she threatened Laurent with a knife, is somewhat more substantial. Evidence of "other crimes, wrongs, or acts" is not admissible "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). Such evidence, however, may b~ admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of rhistake or accident." Id.
On the one hand, the prior bad acts evidence could conceivably have been used by the jury to make the prohibited propensity inference-i. e., once a dangerous knife-wielder, always a dangerous knife-wielder, although in doing so, the jury would have violated the trial court's instructions. On the other hand, however, the jury could have found that, consistent with those instructions, Donovan's prior threats with a knife showed, among other things, motive, intent, plan and absence of accident.
We need not decide whether the evidence of Donovan's prior threats was admitted in error because any error was harmless. See, e.g., United States v. Ali, *209 493 F.3d 387, 392-93 n. 3 (3d Cir.2007) (stating that an error is harmless if it does “not appear the evidence had a substantial impact on the jury’s verdict”). The evidence of Donovan’s guilt was, as noted above, overwhelming. To begin with, Donovan’s version of events was inconsistent, both internally as her story changed, and with the physical evidence at the scene of the murder, most particularly the rigor mortis and dried blood. Certainly, too, Donovan’s odd behavior following the murder, such as the phone calls to women that she believed had been sexually intimate with Laurent, is not indicative of a grief-stricken woman who had just witnessed her boyfriend’s murder.
Moreover, the government presented a veritable smorgasbord of other damning evidence. That evidence included the coincidence of borrowing a co-worker’s car at or about the estimated time of Laurent’s death; Donovan’s comments on the way to the police station about Laurent’s alleged philandering; her minor injuries after supposedly doing battle with the knife-wielding assailant; the fact that there was no evidence that the masked man had run off in the direction claimed by Donovan; the fact that the K-9 patrol dog did not pick up the scent of a third party; and the government’s cross examination, particularly of Donovan’s sister, which destroyed the story about seeing Laurent picking up chicken long after the credible evidence so clearly indicated he was dead.
Additionally, the prior bad acts evidence did not go to the key question posed to the jury: whether Laurent was killed in the manner and at the time claimed by Donovan, or whether he died much earlier and Donovan concocted a cover story to disguise her commission of the crime. So viewed, the disputed evidence was ancillary to the main issue or issues of disputed fact. Finally, any prejudice was limited by the detailed limiting instructions the trial court gave to the jury after the prior bad acts testimony was admitted. See, e.g., United States v. Vitillo, 490 F.3d 314, 329 (3d Cir.2007) (noting relevance of instructions). Accordingly, we find that any error, if error there be, had no substantial effect upon the verdict.[2]

III. Donovan’s Racially-Charged Statement

Finally, Donovan argues that the trial court erred in admitting a racially-charged statement that she made to the warden of the prison to which she was taken following her arrest. The warden, who apparently knew Donovan, saw her and asked, “girl, that’s you, what you doing here?” (App.190.) Donovan responded, saying, “[t]hey say I kill the man, they locking me up for a frigging island man, they locking me up for a frigging island man.” (Id. at 191.) The term “island man” is derogatory, and refers to persons of Eastern Caribbean descent. Laurent was of Eastern Caribbean descent, as was a majority of the jury.
The statement did have the potential for prejudice, as it may have engendered antipathy towards Donovan in the minds of the jurors. However, the statement was also quite probative insofar as it shows a *210 striking lack of remorse indicative of malice aforethought and premeditation. Under Federal Rule of Evidence 403, relevant evidence need only be excluded if its “probative value is substantially outweighed by the danger of unfair prejudice.” This Rule 403 balancing is “within the sound discretion of the ... Court,” and we review “only for abuse of discretion.” See, e.g., United States v. Pelullo, 14 F.3d 881, 888 (3d Cir.1994).
We find that the trial court’s decision to admit the statement was not an abuse of discretion. The probative value of the statement was not substantially outweighed by the potential for prejudice.

Conclusion

For the reasons set forth above, we will affirm the judgment of conviction.

Dissent

. Donovan was sentenced to life imprisonment, a consecutive term of ten years, and a concurrent term of fifteen years with five years suspended. Her sentence is not at issue on this appeal.

. Donovan strenuously argues that the Appellate Division incorrectly stated the standard when it held that the admission of the character evidence and the prior bad acts evidence was harmless. We agree with Donovan that the harmless error analysis focuses on whether the error in question had a substantial effect on the verdict, and not on the distinct question of whether there was sufficient evidence, notwithstanding the error, to support the verdict. Applying the correct standard, and as noted above, we find that any error here had no effect on the verdict, given the substantial evidence of Donovan's guilt and the detailed limiting instructions of the trial court.