

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-2-2009

# USA v. Michael Guibilo

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2494

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Michael Guibilo" (2009). *2009 Decisions.* Paper 1078.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1078

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 06-4544 & 08-2494

UNITED STATES OF AMERICA

v.

MICHAEL GUIBILO,
Appellant

On Appeal from the United States District Court
for the District Court of New Jersey
District Court  No. 2-04-cr-00558-001
District Judge: The Honorable Jose L. Linares

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 24, 2009

Before: BARRY, SMITH, *Circuit Judges*
and RESTANI, *Judge**

(Filed: July 2, 2009)

OPINION

SMITH, *Circuit Judge.*

_____

*The Honorable Jane A. Restani, Chief Judge of the United States Court of
International Trade, sitting by designation.

1

Appellant Michael Guibilo, who had a history of working with the FBI as an undercover operative, was charged with committing three armed robberies, and attempting a fourth, of banks in Millburn and West Caldwell, New Jersey. Guibilo's defense at trial was that the FBI framed him for the crimes in order to prevent him from publicly disclosing the details of his work with the agency. A jury found him guilty of all charges, and the District Court sentenced him to serve a total term of 1,080 months of imprisonment.

On appeal, Guibilo alleges seven errors: 1) the Government, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), did not produce a copy of a manuscript that he authored; 2) the District Court erred in preventing him from introducing evidence of specific details of his successful work with the FBI; 3) the Government committed misconduct by permitting perjury, manufacturing evidence, and covering up evidence of this alleged prosecutorial misconduct; 4) the District Court committed misconduct by aiding the cover-up of the alleged prosecutorial misconduct; 5) the District Court improperly denied his post-trial motion for a new trial based on newly discovered evidence; 6) the District Court should have suppressed evidence obtained from his home because it was acquired without a proper search warrant; and 7) the evidence is insufficient to support his convictions for committing the three bank robberies.[1] For the

---

[1]The District Court filed its judgment and sentence on October 3, 2006, and Guibilo filed a Notice of Appeal the following day. On December 24, 2007, Guibilo advised us that he had irreconcilable differences with appointed appellate counsel.

reasons that follow, we believe that none of Guibilo's claims has merit, and we will affirm the District Court's judgments.[2]

Inasmuch as we write primarily for the parties, who are familiar with this case, we need not recite additional factual or procedural background.

First, the Government's failure to disclose evidence of Guibilo's manuscript did not violate its obligations under *Brady* because the manuscript was not material to Guibilo's guilt or punishment. *See Brady*, 373 U.S. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). "Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

Nonetheless, on January 9, 2008, Guibilo's appellate counsel filed a brief raising the first two issues for consideration on appeal. On January 18, 2008, we construed Guibilo's December 24, 2007, letter as a motion for leave to file *pro se*. After we advised Guibilo of the dangers and disadvantages of proceeding *pro se*, he signed a waiver of counsel form on April 23, 2008, and asked us to strike his counseled brief.

On October 7, 2007, Guibilo filed a motion in the District Court claiming that his indictment violated his right to a speedy trial and should be dismissed. On April 28, 2008, the District Court denied the motion due to a lack of jurisdiction, and Guibilo appealed. We consolidated Guibilo's two appeals on June 23, 2008, and instructed Guibilo to file a single brief addressing all the issues in both appeals.

On October 29, 2008, Guibilo filed a *pro se* brief that reasserted the first two issues, and added claims three through seven. Because he made no identifiable argument in his brief concerning his speedy trial claim, it is waived. *See United States v. Pelullo*, 399 F.3d 197, 201 n.2 (3d Cir. 2005) ("Where, as here, an appellant fails to raise an issue in an appellate brief, even if it was listed in the Notice of Appeal, it is deemed waived.").

[2]The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

have been different.'" *United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Here, the Government admits that it violated the District Court's discovery order by failing to produce a copy of Guibilo's manuscript prior to trial. Guibilo claims that had he received the manuscript before trial, he could have impeached the credibility of the agent in charge of the investigation, thereby bolstering his defense by casting doubt on the propriety of the Government's investigation.[3] But the Government gave Guibilo the manuscript during the agent's testimony, and Guibilo cross-examined the agent about the manuscript and the agent's knowledge of its existence. Additionally, the manuscript's belated disclosure did not lead to the discovery of any new evidence; as the manuscript's author, Guibilo had knowledge of its existence and its contents. Finally, to the extent that Guibilo suggests that the delayed disclosure itself is evidence of a conspiracy to frame him, the District Court informed the jury that the Government had committed a discovery violation, and Guibilo's closing argument referenced this instruction as evidence that the FBI was

---

[3]We are skeptical that the manuscript had any impeachment value. Guibilo's claims that the agent denied knowledge of the manuscript's existence at a pre-trial suppression hearing, but later testified at trial that he knew about the manuscript and that the Government had it in evidence. Guibilo is mistaken. At the suppression hearing, the agent was never asked about the manuscript, nor did he otherwise indicate whether he had any knowledge of the manuscript.

At the suppression hearing, the agent did deny retrieving audio tapes that Guibilo allegedly made of his conversations with the FBI. Guibilo appears to equate this denial with a denial of the manuscript's existence. He is incorrect. The manuscript and the tapes are completely different items.

4

setting him up.  Accordingly, there is no *Brady* violation.  *See United States v. Kaplan*, 554 F.2d 577, 580 (3d Cir. 1977) ("If exculpatory evidence can be effectively presented at trial and the defendant is not prevented by lack of time to make needed investigation, there is no reversible prosecutorial conduct in ill-timed presentation.").[4]

Second, the District Court did not err in preventing Guibilo from introducing specific details of his successful work with the FBI.  Guibilo claims that these details were necessary for the jury to understand his importance to the FBI, and the lengths that the agency would go to prevent Guibilo from publicizing his undercover activities.  The District Court ruled that not all these details were relevant, and even if relevant, their probative value was substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 402, 403.  The District Court did state that it would permit Guibilo to ask "whether he was a good informant or a good cooperator . . ." and to "go into the length of the cooperation, the fact that it involved serious crimes, that [Guibilo] helped [the FBI] in the resolution or prosecution of serious . . . very serious matters . . . ."  (S.A. 57.)  On appeal, Guibilo contends that his case is analogous to *Government of the Virgin Islands v.*

---

[4]Similarly, to the extent that Guibilo also claims that the District Court erred in not granting a mistrial in response to the Government's violation of its discovery order, we hold that there was no error because he has failed to show that the violation caused him prejudice.  *See United States v. Lopez*, 271 F.3d 472, 484 (3d Cir. 2001) (affirming a decision not to grant "the extreme remedy of a new trial" for a discovery violation because of "the absence of a showing of prejudice caused by the government's failure to comply with 16(a)(1)(E), and given the discretion explicitly provided to the District Court by Rule 16's language").

*Mills*, 956 F.2d 443 (3d Cir. 1992), and that *Mills* requires us to grant him a new trial. We disagree.

In *Mills*, we held that the district court improperly denied the defendant's Sixth Amendment rights by preventing him from calling a witness who would have provided new and non-cumulative evidence in support of his defense. *Id*. at 448. There, the excluded witness was one of only two witnesses who had placed the defendant at the scene of the crime, but was now prepared to testify that he was mistaken in his initial identification. *Id*. at 444–45. Here, however, the excluded details of Guibilo's work with the FBI were cumulative. The District Court permitted Guibilo to introduce evidence that he was involved in "substantial" and "dangerous" matters, that he was "reliable," "credible," "truthful," and "a good source," that his life was in danger because of his cooperation, and that this relationship began in 1971 and extended into the 1990s. (S.A. 1295–96, 1351–52, 1358, 1435–37, 1457.) Any specific details of Guibilo's successes would have only reinforced this already-admitted evidence. Therefore, we do not believe that the District Court abused its discretion when it barred the introduction of details that it deemed irrelevant or unfairly prejudicial.[5] *See United States v. Mathis*, 264 F.3d 321, 326–27 (3d Cir. 2001) ("We review a district court's decision to admit or exclude evidence for abuse of discretion, and such discretion is construed especially broadly in the

---

[5]For example, the District Court did not permit Guibilo to introduce evidence that he personally saved someone's life.

context of Rule 403.").

Third, we do not believe there is any merit to Guibilo's claims of prosecutorial misconduct. Guibilo claims that the Government was complicit in the perjury of Government witnesses, manufactured evidence that Guibilo owed his doctor substantial sums of money, and covered up these transgressions. We have found no evidence on the record that supports any of these contentions.

Fourth, since we see no evidence of prosecutorial misconduct, we reject Guibilo's claim that the District Court helped cover up any prosecutorial misconduct.

Fifth, the District Court did not abuse its discretion in denying Guibilo's Rule 33 motion for a new trial on the basis of newly discovered evidence. *See United States v. Saada*, 212 F.3d 210, 215 (3d Cir. 2000) (reviewing a motion for a new trial under Federal Rule of Criminal Procedure 33 for an abuse of discretion). A defendant must satisfy five requirements before a trial court can grant the defendant a new trial on the basis of newly discovered evidence: "(a) the evidence must be in fact newly discovered, i.e. discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." *Id*. at 216 (citation omitted). Here, Guibilo sought a new trial based on a certification from an employee at Guibilo's doctor's office that, according

7

to Guibilo, casts doubt on his purported financial motive to rob the banks: to pay outstanding medical bills. The District Court determined that Guibilo's newly discovered evidence failed to meet the second, third, and fifth requirements. We agree. From the facts on the record, we cannot infer that Guibilio was diligent in his pre-trial efforts to obtain this evidence.[6] Additionally, Guibilo's medical bills were only one aspect of the Government's theory of financial motive. The Government also introduced evidence that Guibilo had a cocaine habit and dwindling financial assets. Even without the medical bills, the Government had sufficient evidence to sustain Guibilo's convictions.[7] Therefore, we will not disturb the District Court's decision to deny Guibilo's motion for a new trial.

Sixth, Guibilo has waived his argument in favor of suppressing evidence obtained from his home because he failed to include it in his pre-trial motion to suppress. According to Federal Rule of Criminal Procedure 12(b)(3), a motion to suppress evidence "must be raised before trial." Rule 12(e) states that, absent good cause, "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets [for pre-trial motions] or by any extension the court provides." Here, Guibilo claims that

---

[6]Guibilo's explanation is that he asked his doctor to provide him with a list of employees, his doctor promised to do so, but never did. Guibilo also indicated that he searched Department of Motor Vehicles' records for the names of the doctor's employees, but this search came up empty. This is not diligence. For instance, Guibilo could have asked the District Court to subpoena the list of the doctor's employees.

[7]The full scope of the Government's evidence will be addressed in our discussion of Guibilo's evidentiary sufficiency claim.

evidence obtained from his home should be suppressed because the search warrant for his home was dated March 9, 2004, but the Government conducted its search on March 8, 2004.[8] Guibilo, however, did not include this argument in his pre-trial motion to suppress evidence; he advanced it for the first time in his post-trial motion for a new trial. Guibilo also has not provided us with any explanation as to why this argument was omitted from his pre-trial motion. As a result, he has failed to comply with his obligations under Rule 12, and we dismiss Guibilo's suppression argument as waived. *Cf. United States v. Rose*, 538 F.3d 175, 185 (3d Cir. 2008) ("Under Federal Rule of Criminal Procedure 12, a federal criminal defendant is barred, absent good cause, from raising a reason to suppress evidence for the first time on appeal.").

Seventh, there is sufficient evidence to sustain Guibilo's convictions relating to the three armed bank robberies. We review challenges to the sufficiency of the evidence by "view[ing] the evidence in the light most favorable to the government and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (internal citations and quotations omitted). "'It is not for us to weigh the evidence or to determine the credibility of the witnesses.'" *Id*. (quoting *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996)). Here, a bank teller who witnessed the first robbery testified

---

[8]As the search warrant appears on the record, the number "9" on the date is crossed out, and a handwritten number "8" appears above it. (A. 88.) The agent in charge of the search testified that he executed the warrant on March 8, 2004.

that she saw the face of the robber as he fled, and identified Guibilo as the robber at trial.

The Government also introduced circumstantial evidence that Guibilo robbed the other two banks: 1) bank employees who were present at the second and third robberies testified that the same individual committed both;[9] 2) the second and third robberies were committed in the same manner as the first; 3) when Guibilo was arrested outside of a bank for attempting to commit a fourth armed robbery, he was wearing a similar disguise and carrying the same items that were used in the three other robberies, including a handgun, a fake bomb, and a police scanner; 3) the police scanner recovered from Guibilo at the time of his arrest was preset to intercept police communications in the areas of the robbed banks and Guibilo's home; 4) carpet fibers found on the fake bombs that were used in the three robberies were consistent with the carpet in Guibilo's home; 5) the three robberies occurred near the offices of either Guibilo's doctor or Guibilo's lawyer; 6) Guibilo had a cocaine habit, substantial outstanding medical bills, and dwindling financial assets; 7) records reflected significant reductions in Guibilo's outstanding medical bills soon after each of the three robberies; and 8) Guibilo pleaded guilty to robbing two Florida banks in 1990 in a manner similar to the robberies here.  Accordingly, the evidence is sufficient to convict Guibilo of the charges relating to the three armed bank robberies.

---

[9]The perpetrator robbed the same bank twice.