# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 24-2824

UNITED STATES OF AMERICA

v.

OMOYOMA OKORO,
Appellant

_____

Appeal from U.S. District Court, M.D. Pa.
Judge Jennifer P. Wilson, No. D.C. Criminal No. 1:19-cr-00183-001)


Before: PORTER, FREEMAN, and CHUNG , *Circuit Judges*
Submitted Oct. 23, 2025
_____


NONPRECEDENTIAL OPINION[*]


PORTER, *Circuit Judge*. Omoyoma Okoro was convicted of fraud after a jury trial. He was sentenced to 100 months in prison. He now claims that he was deprived of favorable witness testimony, convicted based on insufficient evidence, and sentenced for victim losses for which he is not responsible. For the reasons below, we will affirm the District Court's judgment.

## I.

Okoro and his co-conspirators engaged in an elaborate fraud scheme through which they defrauded attorneys of millions of dollars. He was indicted for conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349 (Count

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

1); mail fraud in violation of 18 U.S.C. § 1341 (Count 2); wire fraud in violation of 18 U.S.C. § 1343 (Counts 3 and 4); and bank fraud in violation of 18 U.S.C. § 1344 (Count 5). Okoro's case was originally joined with that of his brother and co-conspirator, Omoefe Okoro (Omoefe). The government later dismissed the indictment against Omoefe on speedy trial grounds. *See United States v. Okoro*, No. 1:12-cr-241, 2023 WL 2742737 (M.D. Pa. Mar. 31, 2023). Omoefe then, of his own accord, returned to his home country of Canada.

Okoro proceeded to trial, during which one of his co-conspirators, Henry Okpalefe, testified about Okoro's criminal activity and corroborated electronic evidence showing the same. From the first day of trial, Okoro sought to have Omoefe testify remotely. After further investigation and discussion with counsel, the Court ruled on the second day of trial that Omoefe could testify remotely only if he did so from a government facility in Canada, and that the government need not work with defense counsel to facilitate his testimony. The defense failed to so arrange Omoefe's testimony. After the government rested, Omoefe made no arrangements to testify remotely beyond telling defense counsel over the phone that he would "try to be available tomorrow." Supp. App. 823. The Court thus denied the defense's motion for Omoefe to testify remotely. The defense then rested its case, and the jury convicted Okoro on every count of the indictment.

At sentencing, the District Court determined that Okoro's total offense level was 33. This accounted for his base offense level (7), a loss amount over $9.5 million (+20), causing financial hardship to five or more victims (+4), and a substantial part of the

2

scheme committed outside the United States (+2), for a total level of 33. With zero criminal history points, an offense level of 33 yields a Guidelines range of 135 to 168 months.[1] The District Court departed downwards and sentenced Okoro to 100 months in prison followed by five years of supervised release. The Court also ordered Okoro to pay special assessments totaling $500 and restitution of $22,565,929.18. Okoro timely appealed.

## II.[2]

On appeal, Okoro raises three challenges to his conviction. He argues that the government violated the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment by deporting Omoefe before trial. He also challenges the sufficiency of the evidence and the District Court's calculation of the loss amount. We address each issue in turn.

### A.

The Sixth Amendment protects the right of a criminal defendant to offer the testimony of favorable witnesses and "to have compulsory process for obtaining

---

[1] Although Okoro was a zero-point offender, which ordinarily carries with it a two-level decrease, the District Court found that Okoro was disqualified from receiving that reduction under U.S.S.G. § 4C1.1(a)(6) because he personally caused financial hardship to one or more victims.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We review Compulsory Process Clause claims for harmless error. *Gov't of V.I. v. Mills*, 956 F.2d 443, 448 (3d Cir. 1992). Our standard of review on a challenge to the sufficiency of the evidence is plenary, but with substantial deference to the jury's verdict. *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010); *see Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979). We review the District Court's findings of fact in support of its loss calculation amount for clear error. *United States v. Free*, 839 F.3d 308, 319 (3d Cir. 2016).

witnesses in his favor." U.S. Const. amend. VI. This includes the defendant's right to have the assistance of the government in "compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). To establish a compulsory process violation, Okoro must demonstrate "[f]irst, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." *Gov't of V.I. v. Mills*, 956 F.2d 443, 446 (3d. Cir. 1992) (citing *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). A court applies harmless-error review when evaluating these claims, regardless of whether they are framed in terms of the Fifth or Sixth Amendment, as the standards are practically coextensive. *See id.* at 445 n.4, 448.

Okoro's challenge fails at the first step because the government did not prevent him from obtaining his brother's testimony. Okoro claims that the government "quasi-deported" Omoefe. *See* Appellant's Br. at 19. But the government took no action to cause Omoefe to leave the country; it simply released him from prison pursuant to court order. Okoro does not allege that the government could have lawfully taken any action to compel Omoefe to remain in the country. Rather, Okoro has offered only the unsupported assertion that Omoefe is "legally unable" to return to the United States. App. at 31a.

Okoro did not alert anyone that he was seeking to present his brother's testimony until the day of trial. His attorney did not speak to or otherwise contact Omoefe until the third day of trial. Even then, the Court tried to accommodate Okoro's request by allowing

4

Omoefe to testify from a secure government location in Canada under the supervision of a government official. But Omoefe never arrived at the location. Under these circumstances, the Court was justified in denying Okoro's motion for Omoefe to testify remotely rather than waiting to see whether Omoefe's representation that he would "try to be available tomorrow" would come to fruition. *See* Supp. App. 823, 828.

As the government took no action to prevent Omoefe from testifying, it could not have "deprived [Okoro] of the opportunity to present evidence in his favor." *Mills*, 956 F.2d at 446. Further, Okoro cannot show that the evidence Omoefe would have offered— that he did not associate Okoro with one of the email addresses at issue in the fraud scheme—would have been "material and favorable" to his defense. *See id.* Indeed, while counsel proffered that Omoefe *might* give this testimony, he admitted to the Court that Omoefe had not given him "a straight answer" on this point during their conversations. Supp. App. at 674. Because Okoro cannot show what Omoefe's testimony would have been, much less how it would have held up on cross-examination, he cannot satisfy the "material and favorable" prong of *Mills*. 956 F.2d at 446. Finally, because the government did not deprive Okoro of his brother's testimony, we need not consider whether "the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." *Id.* Okoro cannot establish the elements required for a compulsory process violation, so his claim must fail.

B.

When evaluating a sufficiency-of-evidence challenge, the Court considers "the record in the light most favorable to the prosecution and asks only whether *any*

5

'reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.'" *United States v. Jacobs*, 21 F.4th 106, 112 (3d Cir. 2021) (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430–31 (3d Cir. 2013) (en banc)). This standard sets a high bar, and Okoro cannot meet it.

Okoro argues that the jury lacked the evidence it needed to conclude he was the "actual person operating and writing emails from omaokoro2001@yahoo.co.uk." Appellant's Br. at 22. Even though the emails were authenticated, the testimony about them came largely from Okoro's co-conspirator Okpalefe, who Okoro argues was not credible due to his self-serving motivation for testifying for the government. Additionally, Okoro maintains that Okpalefe has never met him at all, much less witnessed him send an email from the address in question.

These assertions, however, cannot overcome the "no reasonable juror" standard. The testimony given by Okpalefe was detailed and comprehensive, outlining his telephone and in-person conversations with Okoro in which they discussed the attorney collection scheme. Okpalefe also showed the jury evidence that Okoro sent personal emails through omaokoro2001@yahoo.co.uk, using characteristic speech patterns and referring to family members that Okpalefe knew personally. This evidence gave the jury more than ample grounds to link Okoro to the attorney collection scheme and to find Okoro guilty. Accordingly, Okoro's sufficiency-of-the-evidence challenge fails.

C.

At sentencing, the government must establish the loss amount (which need only be a "reasonable estimate") by a preponderance of the evidence. *United States v. Free*, 839

6

F.3d 308, 319 (3d Cir. 2016). We review for clear error a District Court's factual findings supporting its calculation of the loss amount. *Id.*

The District Court found that the loss amount was $22,565,929.18 based on a detailed spreadsheet of the losses of each of the 78 victims and the co-conspirators who caused the loss to each victim. The District Court also cited the evidence presented by the government at trial as a basis for its decision. Okoro argues that only $6,756,632 of the loss can be attributed to him because "he was not aware of all the numerous other activities being undertaken" by his co-conspirators and thus should not be held responsible for the full extent of the loss they caused. Appellant's Br. at 26. But this is contrary to the voluminous evidence presented at trial demonstrating that Okoro frequently communicated with his co-conspirators about the larger fraud scheme and jointly engaged with them in criminal activity. Okoro's bare assertions that he did not know what exactly his co-conspirators were up to is not enough to show that the District Court clearly erred in calculating the loss amount resulting from his conspiracy.

\* \* \* \* \*

We will AFFIRM the District Court's judgment of conviction.