**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1685
_____

JANE C. ORIE,
                          Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF
CORRECTIONS
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-15-cv-01153)
Magistrate Judge: Honorable Robert C. Mitchell
_____

Argued June 5, 2019

Before: JORDAN, BIBAS, and MATEY, *Circuit Judges*

(Filed: October 15, 2019)
_____

William C. Costopoulos     [ARGUED]
Costopoulos Foster & Fields

831 Market Street
P.O. Box 222
Lemoyne, PA 17043
   *Counsel for Appellant*

Ronald M. Wabby, Jr.        [ARGUED]
Allegheny County Office of District Attorney
436 Grant Street
Pittsburgh, PA 15219
   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Forging evidence is one way to get a mistrial. Jane Orie, a former Pennsylvania state senator, introduced forged evidence at her trial in state court. So the judge declared a mistrial. (The exhibits that triggered the mistrial are appended to this opinion.) During Orie's second trial, the court excluded her expert witness because his testimony would have been irrelevant. After her second trial, a jury convicted her of forgery, theft of services, Pennsylvania Ethics Act violations, and related crimes. Orie now brings a federal habeas petition challenging these convictions.

We hold that Orie's convictions do not warrant habeas relief. To start, we lack jurisdiction to consider her challenge to her Ethics Act convictions because she is not in custody for those convictions. On the merits, the state appellate court reasonably upheld the trial court's finding that a mistrial was

2

manifestly necessary because the forged documents could have tainted the jury's verdict. So the mistrial and retrial did not amount to double jeopardy. And Orie did not show that her senate-rules expert's testimony would have been material, so she had no constitutional right to call this witness. As to the Ethics Act convictions, we will thus vacate and remand with instructions to dismiss for lack of jurisdiction. We will otherwise affirm.

## I. BACKGROUND

Orie used her government-funded legislative staff to do political fundraising and campaigning for her reelection. When the Commonwealth started investigating that behavior and other alleged misconduct, she tried to hide and destroy documents. The Commonwealth then charged Orie with several crimes related to using state employees for personal gain and later trying to cover it up. Her sisters, Joan Orie Melvin, a Pennsylvania Supreme Court Justice, and Janine Orie, Melvin's aide, were charged with similar crimes.

### A. Orie's first trial and the forged exhibits

In February 2011, Orie's case went to trial in Pennsylvania state court. At trial, she argued that she had consistently instructed her staff not to do political work on legislative time. She accused her chief of staff, Jamie Pavlot, of disobeying her instructions by letting staff do campaign work on the taxpayers' dime. Orie introduced and authenticated a number of exhibits with directives from her to Pavlot not to do political work on legislative time. But Orie claimed that Pavlot disregarded these directives.

Pavlot, who testified for the prosecution, said she did not recall seeing these directives. Orie's lawyer found this incredible. Both in his cross-examination of her and in his closing argument, he repeatedly questioned Pavlot's failure to recognize the documents.

But the prosecution quickly determined that at least two of these exhibits had forged signatures. *See infra* Appendix. During the cross-examination of Orie, the prosecution pointed out that Pavlot's signature line on one exhibit did not line up with the other words on the page. *See infra* Appendix Ex. 101B. And the prosecution claims that it noticed during jury deliberations that Pavlot's signature on a different exhibit seemed to have been copied and pasted from another document. *Compare infra* Appendix Ex. 101A (original signature), *with id.* Ex. 110 (copied-and-pasted signature). The prosecution made this discovery only three days after the defense belatedly turned over these exhibits.

The court immediately held a hearing to figure out what to do about the alleged forgeries. At the hearing, the prosecution called a handwriting expert, who testified that the signatures on the documents had been copied and pasted. The defense chose neither to cross-examine the prosecution's expert nor to introduce any evidence to contradict the expert's testimony. The prosecution asked the court to give the jury a special instruction on these forged documents. The defense objected to any new jury instructions, saying that it would prefer a mistrial to a new instruction. But Orie also objected to a mistrial and simply asked that jury deliberations resume. The court found that the forged documents were "a fraud on the Court," the

4

jury, and the justice system; "call[ed] into suspicion every document that the defense offered"; and could undermine any verdict that the jury might reach. App. 1573a. So it declared a mistrial.

After the mistrial, the prosecution had the Secret Service test the authenticity of thirty-four original defense exhibits. The Secret Service found that well over a dozen of these exhibits had handwriting that "may have been reproduced via photocopies." App. 1695a. It also found evidence that Pavlot's signature had been copied and pasted into three exhibits. As discussed below, after her second trial, Orie was convicted of forgery and evidence tampering for introducing fake exhibits during her first trial.

## B. Orie's second trial and exclusion of her expert witness

In February 2012, Orie went to trial again on both her original charges and new charges related to the fake exhibits. During this second trial, the prosecution called an expert who testified that Orie's office lease barred her staff from using that office for anything besides legislative work. Orie asked to call an expert in rebuttal. She said that her expert would testify that the senate rules let staff do political work from senators' legislative offices on comp time. (Compensatory time, often called comp time, is time that an employee may take off work in return for having worked extra hours. *See, e.g.*, 29 U.S.C. § 207(*o*).)

The prosecution argued that the senate rules were irrelevant. It pointed out that Orie's behavior could break the law

even if her behavior did not violate the senate rules. The court agreed. The court also worried that the jury might think her expert was opining on the law. So it excluded her senate-rules expert.

The jury convicted Orie of theft of services, conspiracy to commit theft of services, evidence tampering, and forgery. It also convicted her of using her political position for personal gain, in violation of the Pennsylvania Ethics Act, 65 Pa. Cons. Stat. § 1103(a) (conflict of interest). *See also id.* § 1102 (defining conflict of interest)*.* The court sentenced Orie to prison for her theft-of-services, conspiracy, evidence-tampering, and forgery convictions. But on the Ethics Act convictions, it imposed "[n]o further penalty." App. 1066a; *see* Pa. Cons. Stat. § 9723.

## C. Post-conviction proceedings

Orie appealed her convictions in state court, but to no avail. *Commonwealth v. Orie*, 88 A.3d 983 (Pa. Super. Ct.), *appeal denied*, 99 A.3d 925 (Pa. 2014). She then filed this federal habeas petition, which the District Court rejected on the merits. We granted a certificate of appealability. On appeal, she makes three arguments: first, that the Pennsylvania Ethics Act is unconstitutionally vague; second, that her retrial violated the Double Jeopardy Clause; and third, that excluding her senate-rules expert violated her constitutional right to call witnesses in her defense.

Besides disputing these claims on the merits, the Commonwealth raises two procedural issues: First, it argues that we lack jurisdiction over Orie's Ethics Act claim, because she received no further penalty. Second, it argues that she failed to exhaust

6

her Sixth Amendment claim. Her habeas appeal was consolidated with those of her sisters, who were also convicted of various crimes. We will issue separate opinions in each case.

## D.  Standard of review

On federal habeas review of state convictions, we defer to state courts. "[W]e review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008)). We must presume that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1). A petitioner can rebut this presumption only by offering "clear and convincing evidence." *Id.*

We also defer to state courts on issues of law: We must uphold their decisions of law unless they are "contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1). So on federal habeas, "even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). Instead, the state court must be wrong "beyond any possibility for fairminded disagreement." *Id.* at 420 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

## II.  WE LACK JURISDICTION OVER ORIE'S ETHICS ACT CLAIM

Orie is not in custody for her Pennsylvania Ethics Act convictions. We thus lack jurisdiction to reach the merits of her claim that the Ethics Act is unconstitutionally vague.

7

A federal court has habeas jurisdiction only if the petitioner is "in custody." 28 U.S.C. § 2254(a). She is in custody when she suffers a "non-negligible restraint on [her] physical liberty" because of a particular conviction. *Piasecki v. Court of Common Pleas*, 917 F.3d 161, 166 (3d Cir. 2019) (internal quotation marks omitted). We gauge custody for each offense independently. *Maleng v. Cook*, 490 U.S. 488, 490–92 (1989). In other words, a defendant convicted of multiple offenses can be in custody for one but not for another.

Orie was sentenced to "[n]o further penalty" on her Ethics Act convictions. App. 1066a. She received no sentence of incarceration or confinement of any kind on those counts. So Orie suffered no physical restraint and thus was never in custody for these offenses.

Orie claims she was in custody for her Ethics Act convictions because she suffered one "general sentence" for all her offenses. Appellant's Br. 24. But her sentencing order imposed a discrete sentence for each count of conviction. And the order said that she would not be punished beyond a determination of guilt for her Ethics Act convictions.

Orie also argues that she was in custody for her Ethics Act convictions because her conspiracy and theft-of-services convictions were "predicated" on her Ethics Act convictions. *Id.* This argument fails as well. Her conspiracy conviction was predicated instead on her agreement to commit theft of services. And the theft-of-services statute does not depend on any other offense. *See* 18 Pa. Cons. Stat. § 3926(b). Her convictions may have been based on the same behavior, but Orie's Ethics Act convictions were separate from her other convictions. She

8

is in custody for her conspiracy and theft-of-services convictions, not her Ethics Act convictions. We thus lack habeas jurisdiction over her Ethics Act claim.

### III.  THE SUPERIOR COURT PROPERLY UPHELD ORIE'S RETRIAL

The Fifth Amendment's Double Jeopardy Clause ordinarily bars retrials. But a retrial after a mistrial does not amount to double jeopardy when the mistrial was manifestly necessary. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). Though manifest necessity requires a "high degree of necessity," making that judgment call is "reserved to the broad discretion of the trial judge." *Renico v. Lett*, 559 U.S. 766, 774 (2010) (internal quotation marks omitted). We scrutinize a mistrial more closely if the trial judge has not exercised his "sound discretion" or if the prosecutor appears to be "harass[ing]" or gaining a "tactical advantage over the accused." *Arizona v. Washington*, 434 U.S. at 508, 510 n.28. But absent such prosecutorial misconduct, if a trial judge grants a mistrial to prevent a jury verdict from being tainted by other trial misconduct, that judgment "is entitled to special respect." *Id.* at 510.

We are even more deferential on federal habeas review. We look to the last reasoned state-court decision, which here is the Pennsylvania Superior Court's affirmance on direct appeal. We do not ask whether the trial judge should have declared a mistrial, nor whether it abused its discretion by doing so. Rather, we ask only whether the state appellate court's finding that there was no abuse of discretion was "an unreasonable application of … clearly established Federal law, as determined

by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1); *accord Renico*, 559 U.S. at 772–73.

### A.  The Superior Court's decision was reasonable

The Pennsylvania Superior Court's decision more than satisfies our deferential standard of review. To begin, it reasonably set forth the federal principles governing appeals of a manifest-necessity finding. It explained that it was reviewing for abuse of discretion, deferring to the trial court's superior ability to gauge potential bias and jury prejudice. 88 A.3d at 995–97; *see Renico*, 559 U.S. at 772–73 (standard of review); *Arizona v. Washington*, 434 U.S. at 510 (deference). And it warned that trial courts should not declare mistrials too readily and should resolve any doubts in favor of the defendant. 88 A.3d at 996; *see Renico*, 559 U.S. at 772–74.

Next, the Superior Court reasoned that the trial court had legal authority to grant a mistrial once it discovered that the exhibits were forged. It reasonably held that "[o]nce the trial judge realized forged documents had been admitted into evidence, he could *not* allow those documents to enter into the jury's deliberation and verdict." 88 A.3d at 998. No Supreme Court case suggests otherwise. On the contrary, in so holding, the Superior Court cited and reasonably interpreted the Supreme Court's guidance. *See id.* (citing trial court's opinion as in turn citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)); *see also Hazel-Atlas*, 322 U.S. at 246 ("The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.").

10

The Superior Court also reasonably upheld the trial court's "initial factual determination that the documents were forgeries." 88 A.3d at 998–99. In doing so, it made a series of reasonable observations: The jury did not have enough evidence to resolve that question. *Id.* at 998. Though the prosecution brought out Exhibit 101B's defects on cross-examination of Orie, it did not discover Exhibit 110's forgery until after the jury had started deliberating. *Id.* The jury was never instructed what to do if it found that documents were forged. *Id.* And because the defense did not let the prosecution inspect the documents until the second-to-last day of trial, the prosecution could not have discovered the forgeries earlier. So the prosecution could not introduce evidence to help the jury evaluate the exhibits. *Id.* at 998–99. The record amply supports each of these observations.

Further, the Superior Court reasoned that the forged exhibits were material to the trial's outcome. As it noted, Orie had argued "that Pavlot had the complete authority to direct the staffers and that Pavlot acted on her own initiative and against Orie's directives that no improper political activity occur in the office." *Id.* at 999. The forged documents supported that reading. Orie had introduced these documents to show that Pavlot had disobeyed Orie's directives and let the staff do campaign work on legislative time. These and similar documents were the basis of Orie's argument to the jury that Pavlot, not Orie, was responsible for the staffers' actions. And when Pavlot could not remember any of the directives on cross-examination, the defense impugned her credibility.

Pavlot's credibility was at the heart of the case. As Orie's lawyer argued in closing, "[t]he Commonwealth's case rises and falls on [Pavlot's] truthfulness." Tr. Pt. 7, 1st Trial (Mar. 2, 2011), p. 3180. So Pavlot's forged signatures on those documents greatly inflated the force of Orie's arguments and her cross-examination of Pavlot.

Finally, the Superior Court emphasized that while the trial court had solicited and weighed alternative remedies, it had reasonably found that nothing short of a mistrial would counteract the fraud. 88 A.3d at 998–99. That reasoning is sound. The trial court repeatedly asked the parties what it should do about the forgeries, both before and after hearing from the handwriting expert. Twice, the prosecution suggested a curative instruction. But twice, the defense balked, insisting that "[b]efore you do that then declare a mistrial" and that giving an instruction "is absolutely not an option here." App. 1557a, 1571a. Orie's only proposed remedy, as the Superior Court noted, was to do nothing. *See* 88 A.3d at 999 & n.13; *see also* App. 1572a ("We are asking that [the jury's] deliberations resume immediately, and we are opposed to a mistrial."). Given the importance of the forged documents, the threat to the integrity of the verdict, and the lack of a good alternative remedy, the only solution was a mistrial. So we cannot say that the Superior Court's decision to uphold the grant of a mistrial was unreasonable.

## B. Orie's objections fail

Orie challenges the decision upholding the mistrial on five grounds. Not one succeeds.

First, she criticizes the trial court's decision to halt jury deliberations and seize the questioned exhibits after speaking only with the prosecution. But even if that is what happened, there is nothing wrong with that. When they learn of possible misconduct, judges often tell juries to stop deliberating without first telling counsel. *E.g.*, *United States v. Bristol-Mártir*, 570 F.3d 29, 36 (1st Cir. 2009). To resolve the forgery allegation here, the trial court needed the challenged exhibits, which the jury had. And there is no reason to think that asking for a pause caused incurable harm. The trial court told the jury only that "there is a legal matter before the Court" and warned the bailiff to retrieve the exhibits without talking to anyone. App. 1541a.

Besides, there was no significant ex parte communication. The prosecutor said exactly two sentences to the judge before the judge told him to wait for defense counsel. When the judge told him to wait, "[d]efense counsel was just entering the courtroom." App. 1589a. The judge did not see the forged documents, hear the prosecutor's arguments, or start to discuss a mistrial before defense counsel got there. Nor is there any ban on declaring a mistrial sua sponte. *United States v. Wecht*, 541 F.3d 493, 504 (3d Cir. 2008).

Second, Orie claims that the prosecution had repeatedly questioned the defense exhibits' credibility and meaning, so the jury was already on notice of potential forgery. But questioning evidence's credibility and meaning is quite different from showing that it is forged. The specter of forged trial exhibits came up only briefly at trial—most notably when the prosecution questioned Exhibit 101B's authenticity on cross-examination.

13

Third, Orie argues that the trial judge usurped the jury's factfinding role. She argues that the jury should have decided the question of forgery, not the judge. But there is no legal or logical reason why courts cannot find facts in granting mistrials. Indeed, they must do so, especially where the impropriety giving rise to the mistrial could prejudice the jury.

Fourth, Orie blames the prosecution for seeking a tactical advantage and intentionally provoking a mistrial. But the prosecution never asked for a mistrial, even after the court discussed that possibility and even after the handwriting expert testified. Indeed, the remedies it did request were quite tame and reasonable. At first, it asked the court to instruct the jury to compare the two signatures and draw its own conclusions. After the expert testified, the prosecution sought an instruction or stipulation that the documents were forged and an instruction to consider the significance of the forgery. But Orie refused to consider these options, instead preferring a mistrial. If anyone provoked a mistrial, it was Orie herself.

Finally, Orie says that the trial court erred by "convicting" her of forgery and fraud without evidence that she intentionally did anything wrong. Appellant's Br. 50. She also objects that Pavlot had custody of the documents and so she could have been responsible for the forgery. But the trial court never accused Orie herself of forgery. Rather, it said: "I don't know who among the parties involved for the defense has done this, but I cannot allow this jury to continue with fraudulent information in front of them." App. 1573a.

What is more, the trial court acted reasonably in blaming the defense for the forgeries. Orie's counsel told the court that

14

the documents "were and are in [the defense's] possession" until trial; the prosecution said that, as far as it knew, the documents had come from Orie's office; and Orie never contested that statement. App. 1555a.

In short, we see no basis to disturb the Superior Court's rejection of Orie's double-jeopardy claim.

## IV. EXCLUDING ORIE'S ETHICS EXPERT WAS PROPER

Orie argues that the trial court violated her constitutional right to present her defense by excluding her expert witness on the senate rules. Though Orie may not have preserved this claim, the Commonwealth waived the exhaustion requirement. Still, this claim is meritless. She had no right to call her witness because the witness's testimony would have been immaterial.

### A. We will address the merits of Orie's constitutional claim

The Commonwealth waived its argument that Orie did not exhaust her constitutional claim. Before we can review a state habeas petition, the petitioner must first exhaust her state remedies. 28 U.S.C. §2254(b)(1)(A). But a state can waive exhaustion if it does so explicitly through counsel. *Id.* §2254(b)(3). That waiver is valid even when lack of exhaustion would otherwise have barred the petitioner's claim. *Sharrieff v. Cathel*, 574 F.3d 225, 229 (3d Cir. 2009).

Here, in its answer to Orie's habeas petition, the Commonwealth waived the exhaustion requirement. It conceded that "Petitioner's claims are exhausted" and "Petitioner's claims are not procedurally defaulted." D.C. ECF No. 64, pp. 34–35.

15

These statements were in the answer signed by the Commonwealth's counsel and filed in the District Court. So the Commonwealth waived exhaustion. We will decide her claim on the merits.

The parties quibble over whether Orie's constitutional claim was before the Superior Court. Orie insists that she has all along framed her challenge to the expert's exclusion in constitutional terms. (She now phrases it primarily in terms of the Sixth Amendment, but also touches lightly on due process.) The Commonwealth tells us that in state court, Orie made only an evidentiary argument. And the Superior Court, for its part, reasoned in evidentiary terms. 88 A.3d at 1000–01.

But we need not decide whether the Superior Court's ruling implicitly addressed the merits of Orie's constitutional argument, and so would merit deference on habeas. Whether habeas deference applies or not, the trial court's exclusion of the evidence did not violate the Constitution. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

We have seen "apparently little, if any, difference in the analysis" of excluding evidence under compulsory process or due process. *Gov't of the V.I. v. Mills*, 956 F.2d 443, 445 n.4 (3d Cir. 1992). So we will focus, as Orie does, on the Sixth Amendment.

### B. Orie had no right to put on a senate-rules expert because his testimony would not have been material to her trial

Orie's senate-rules expert would not have offered material testimony, so she had no Sixth Amendment right to call him.

16

The Sixth Amendment's Compulsory Process Clause guarantees a defendant the right to call witnesses in her defense. *Washington v. Texas*, 388 U.S. 14, 19 (1967). But it does not give a defendant the right to introduce any testimony she likes. *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Courts may exclude incompetent, privileged, or otherwise inadmissible testimony under the rules of evidence. *Id.*; *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).

To make out a violation of this Sixth Amendment right to compulsory process, the defendant must show that the witness's "testimony would have been both material and favorable to [the] defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Not all relevant evidence is material. To be material, it must be reasonably likely to affect the trial's outcome. *Id.* at 873–77.

Orie's expert testimony was unlikely to affect her trial's outcome. Her witness was an expert on the senate's rules. He would have testified that these rules let staff do political work in legislative offices using comp time. But Orie was not accused of telling her staff to do political work during comp time. Orie conceded as much. So the jury could not have convicted her for that. Instead, to convict, the jury had to find that she told her staff to do political work on *the state's* time. And her expert testimony about what employees could do on comp time could not have affected that finding.

Orie's rejoinder depends on a misreading of the record. She argues that the prosecution's expert had inaccurately testified that the senate rules forbade all political work in legislative offices. So, she says, she needed her expert to rebut that

17

falsehood. But the prosecution's expert never made such a statement. The prosecution's expert had testified that Orie's office lease, not the senate rules, barred using the office for anything but legislative work. So her expert would not have rebutted the prosecution's expert.

Not only was Orie's expert testimony immaterial, but it could have confused the jury. Judges may exclude evidence that risks "confusing the issues, [or] misleading the jury." Pa. R. Evid. 403. Her expert could have led the jury to confuse what the senate rules allowed with what Pennsylvania law allowed. The trial court wanted the jury to learn the law from the court's instructions rather than from a witness's testimony. The court's reasonable exclusion of evidence under the "standard rules of evidence" does not violate the Sixth Amendment. *Egelhoff*, 518 U.S. at 42 (quoting *Taylor*, 484 U.S. at 410).

\* \* \* \* \*

All three of Orie's arguments fail. She is not in custody for her Ethics Act convictions, so we lack jurisdiction to hear her challenge to that statute. The Superior Court reasonably affirmed the trial court's finding that the forged documents made a mistrial manifestly necessary, so retrying her did not amount to double jeopardy. And Orie's expert testimony about senate rules was immaterial to her case, so excluding her expert witness did not violate her constitutional right to put on her defense. As to the Ethics Act convictions, we will thus vacate and remand with instructions to dismiss for lack of jurisdiction. We will otherwise affirm.

18

## Appendix
## Exhibit 101A
## (Compare Pavlot's signature with Exhibit 110)

101A

**STATE SENATOR
NE CLARE ORIE
H SENATORIAL DISTRICT**

SENATE BOX 203040
THE STATE CAPITOL
HARRISBURG, PA 17120-3040
717-787-6538 • FAX: 717-787-6625
E-MAIL: jorie@pasen.gov
WEBSITE: http://orie.pasenategop.com

LA CASA BLANCA BUILDING
9400 MCKNIGHT ROAD, SUITE 105
PITTSBURGH, PA 15237
412-630-6464 • FAX: 412-635-2199

2525 ROCHESTER ROAD, SUITE 207
CRANBERRY TOWNSHIP, PA 16066
724-776-3500 • FAX: 724-776-3582

**COMMITTEES**

AGING AND YOUTH, CHAIR
PUBLIC HEALTH AND WELFARE, VICE CHAIR
APPROPRIATIONS
COMMUNICATIONS AND HIGH TECHNOLOGY
JUDICIARY
POLICY

JOINT HOUSE AND SENATE AUTISM COMMITTEE, CHA
CHILDREN'S TRUST FUND BOARD
ARTHRITIS AND OSTEOPOROSIS CAUCUS
FIREFIGHTER AND EMERGENCY SERVICES CAUCUS
WOMEN IN GOVERNMENT BOARD
AMERICAN-ITALIAN CAUCUS
IRISH CAUCUS

### Senate of Pennsylvania

❖ Normal office hours are 9:00 am-4:30 pm. It is required for you to be in the office approximately 8:50 am so you are prepared to begin the work day at 9:00 am. The day may extend beyond 4:30 pm on as needed basis or if projects are being assembled.

❖ You may be asked to attend various meetings/functions after regular working hours or on weekends. Comp time will be given back to you for the length of the event, i.e. if the event is from 7:00 pm-8:00 pm, you will have one hour comp time.

❖ The staff is required to attend parades/community events on holidays as needed, i.e. July 4, Memorial Day, Labor Day, or community days within the district.

❖ Election time is critical to the office. NO campaign work is to be done during office hours, so election time will require you to spend extra hours on evenings and weekends. NO COMP TIME WILL BE GIVEN BACK FOR CAMPAIGN WORK

❖ Because of the special events/meetings you may be asked to attend, it is the office policy not to permit an employee to have a second job or attend further education classes.

❖ There will be limited personal phone calls for emergencies and necessities.

❖ NOTHING is to be removed from the office-discs/binders/file folders/casework/etc. Any and all materials are the property of the State of Pennsylvania.

❖ All casework is confidential. There will be no discussion of casework outside the office.

❖ No computers are to be used to create a personal email account. Computers are to be used ONLY for state related business.

❖ Any personal problems/personal issues must go through Jamie.

I fully and completely understand the conditions for employment

_Johnna E Eye_          Date _9-16-04_

Witness _Jamie J. Pavlot_          Date _9/16/04_

_Appendix "C"_          1702a

# Exhibit 101B

101B

**STATE SENATOR**
**ANE CLARE ORIE**
**TH SENATORIAL DISTRICT**

SENATE BOX 203040
THE STATE CAPITOL
HARRISBURG, PA 17120-3040
-17-787-6538 • FAX: 717-787-9633
E-MAIL: jorie@pasen.gov
WEBSITE: http://orie.pasenategop.com

LA CASA BLANCA BUILDING
9400 MCKNIGHT ROAD, SUITE 105
PITTSBURGH, PA 15237
412-630-6406 • FAX: 412-635-5199

2525 ROCHESTER ROAD, SUITE 207
CRANBERRY TOWNSHIP, PA 16066
724-776-3800 • FAX: 724-776-3982

**COMMITTEES**

AGING AND YOUTH, CHAIR
PUBLIC HEALTH AND WELFARE, VICE CHAIR
APPROPRIATIONS
COMMUNICATIONS AND HIGH TECHNOLOGY
JUDICIARY
POLICY

JOINT HOUSE AND SENATE AUTISM COMMITTEE, CHAIR
CHILDREN'S TRUST FUND BOARD
ARTHRITIS AND OSTEOPOROSIS CAUCUS
FIREFIGHTER AND EMERGENCY SERVICES CAUCUS
WOMEN IN GOVERNMENT BOARD
AMERICAN-ITALIAN CAUCUS
IRISH CAUCUS

## Senate of Pennsylvania

❖ Normal office hours are 9:00 am-4:30 pm. It is required for you to be in the office approximately 8:50 am so you are prepared to begin the work day at 9:00 am. The day may extend beyond 4:30 pm on as needed basis or if projects are being assembled.

❖ You may be asked to attend various meetings/functions after regular working hours or on weekends. Comp time will be given back to you for the length of the event, i.e. if the event is from 7:00 pm-8:00 pm, you will have one hour comp time.

❖ The staff is required to attend parades/community events on holidays as needed, i.e. July 4, Memorial Day, Labor Day, or community days within the district.

❖ Election time is critical to the office. NO campaign work is to be done during office hours, so election time will require you to spend extra hours on evenings and weekends. NO COMP TIME WILL BE GIVEN BACK FOR CAMPAIGN WORK.

❖ Because of the special events/meetings you may be asked to attend, it is the office policy not to permit an employee to have a second job or attend further education classes.

❖ There will be limited personal phone calls for emergencies and necessities.

❖ NOTHING is to be removed from the office-discs/binders/file folders/casework/etc. Any and all materials are the property of the State of Pennsylvania.

❖ All casework is confidential. There will be no discussion of casework outside the office.

❖ No computers are to be used to create a personal email account. Computers are to be used ONLY for state related business.

❖ Any personal problems/personal issues must go through Jamie.

I fully and completely understand the conditions for employment

_____ Date 9-13-04

Witness: _____ Date_____

1703a

20

**Exhibit 110**
**(Compare Pavlot's signature with Exhibit 101A)**



September 25, 2006

Senator Jane Orie
4700 McKnight Road
Suite 105
Pittsburgh, PA 15237

Dear Senator Orie,

I am writing to verify that I am directly responsible for all District Office staff/employees submitting their mileage reimbursement by the 5th of each month into Harrisburg.

I will take full responsibility for any repercussions that might occur, should there be any question/questions about verification of claims for travel location for reimbursement as well as the accumulation of months that are submitted at any one time..

I have been responsible for the review and approval of all mileage before the applications are sent into Harrisburg.