**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2615

_____

UNITED STATES OF AMERICA

v.

CHRISTOPHER DANIELS,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:23-cr-00021-001)
District Judge:  Honorable Juan R. Sánchez

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 9, 2025

_____

Before:  KRAUSE, PHIPPS, and CHUNG, *Circuit Judges*

(Filed: April 21, 2026)

_____

OPINION[*]

_____

PHIPPS, *Circuit Judge*.

While on supervised release for a conviction of child pornography possession, a

Philadelphia man did not appear to have complied with the sex offender registration

requirements under SORNA, the Sex Offender Registration and Notification Act, *see*

18 U.S.C. § 2250.  Federal law enforcement officers obtained a warrant to search the house

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

where they believed the man was living for evidence of his reporting violations, and as part of that search, they discovered child pornography on the man's electronic devices. After an additional investigation revealed much more child pornography, the man was charged with and convicted on five counts related to the receipt of, possession of, and access with intent to view child pornography, *see id.* § 2252(a)(2), (a)(4)(B), (b)(1)–(2), as well as one count of failure to register as a sex offender in violation of SORNA, *see id.* § 2250. He received a 15-year (180-month) sentence followed by a 15-year term of supervised release subject to several conditions.

The man now challenges four rulings associated with those convictions and the resulting sentence. First, he contends that the warrant allowing the search of his residence for evidence of SORNA violations was overbroad and the information obtained from that warrant's challenged provisions should have been suppressed. Second, at trial, the man attempted to blame his housemate brother for downloading the child pornography, and in response to relevance and hearsay objections, the District Court did not allow the brother to be questioned about child pornography on his devices. The man now attacks that ruling as a violation of his Sixth Amendment rights. Third, the man asserts that under the Double Jeopardy Clause, U.S. Const. amend. V, he could not be convicted of both access to and possession of the same images and that he could not be convicted of both possession and receipt of the same images. Finally, he submits that the District Court erred in imposing two supervised-release conditions – that he make financial disclosures to his probation officer and that his electronic devices be monitored and subject to inspection for 15 years.

For the reasons below, we will affirm the judgment and the sentence imposed by the District Court.

BACKGROUND

In November 2011, while Christopher Daniels, then age 21, was living on West Lehigh Avenue in Philadelphia with his older brother, Shaun Daniels, they were investigated for possession of child pornography by the Special Victims Unit of the Philadelphia Police Department. They both gave statements to the police in January 2012. In his interview, Shaun stated that after he had visited certain websites, child pornography was downloaded onto his computer and he deleted it. He further posited that he "really d[id]n't think" that Christopher could have downloaded the child pornography. Investigation Interview R. 2 (JA678). During his separate interview, however, Christopher admitted to downloading the child pornography. In March 2015, Christopher was charged with one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). In July 2015, he pleaded guilty and received a 70-month prison sentence followed by a ten-year term of supervised release.

As a result of that conviction, Christopher was subject to the SORNA registration requirements for sex offenders. *See* 34 U.S.C. §§ 20911(1), (5)(A), 20913(a). Among other things, he had to "register[] and keep the registration current" in each jurisdiction where he resided. *Id.* § 20913(a). When Christopher started supervised release in January 2021, despite being unemployed, he stayed at a Hyatt hotel in Philadelphia for about six months, which cost approximately $26,000. Then, in June 2021, he began renting an apartment on the 1900 block of South Street in Philadelphia. In accordance with his obligations under SORNA, *see id.* § 20913(c), Christopher registered both the Hyatt hotel and the South Street apartment with the Pennsylvania State Police.

Yet there was reason to believe that Christopher was living on the 1900 block of Carpenter Street in Philadelphia, where his brother, Shaun, and his mother also resided.

Surveillance of the Carpenter Street house revealed Christopher entering and exiting the residence, retrieving mail, and emptying the garbage. Christopher did not, however, update his sex offender registration to identify the Carpenter Street house as his residence.

Around that same time, Christopher also quit reporting to his probation officer as he was required to do by the terms of his supervised release. On July 13, 2022, in response to a petition by his probation officer, a district judge issued a warrant for Christopher's arrest based on his violations of his supervised-release conditions and his unsuccessful discharge from sex offender treatment. That arrest warrant was not immediately executed. And after its issuance, Christopher did not complete his annual SORNA registration, which was due later that month.

On November 1, 2022, federal law enforcement officers applied for a warrant to search the Carpenter Street house for evidence that Christopher violated SORNA's registration requirements. The requested warrant sought permission to search the premises as well as Christopher's personal belongings, paperwork, mail, and electronic devices for evidence of such a violation. In addition, it sought to seize Christopher's electronic devices. Although that request was broad, the affidavit in support of the warrant explained that "when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names," and it represented that "the examiners will make every effort to use computer forensic software to have a computer search the digital storage media." Zajac Aff. ¶¶ 25(a), 26 (JA563–64). A magistrate judge issued that warrant, and two days later, law enforcement officers searched the Carpenter Street house, seized electronic devices, and arrested Christopher pursuant to the previously issued arrest warrant. In later searching the seized electronic devices for evidence of a SORNA violation, law enforcement officers discovered three cached images of child pornography.

4

That discovery prompted the law enforcement officers to apply for a second warrant to search the seized electronic devices for child pornography. A magistrate judge issued that warrant, and a search of the seized electronic devices uncovered over 6,400 images and videos containing child pornography.

On March 7, 2022, a federal grand jury in the Eastern District of Pennsylvania indicted Christopher, and a later-issued superseding indictment charged him with six counts. Five were for child pornography offenses – Count One for receipt, *see id.* § 2252(a)(2), (b)(1); Count Two for possession, *see id.* § 2252(a)(4)(B), (b)(2); and Counts Three through Five for access with intent to view, *see id.* § 2252(a)(4)(B), (b)(2). The sixth count was for the offense that prompted the arrest warrant and the initial search – failing to register under SORNA. *See id.* § 2250. Christopher pleaded not guilty to each of those charges.

In a pretrial motion, Christopher sought to suppress evidence obtained from the search of the Carpenter Street house. He argued that the warrant was overbroad because it was not necessary to search that invasively for evidence of a failure to update his home address. The District Court denied that motion.[1]

At trial, one of Christopher's key strategies was to blame his brother, Shaun, for the child pornography offenses. As part of that defense, Christopher sought to call Shaun as a witness and question him about whether he had ever seen child pornography, and if Shaun denied doing so, then to read to the jury a transcript of his January 2012 interview with the Philadelphia police in which he stated that some of his downloads from the internet included child pornography. After the prosecution objected on relevance and hearsay

---

[1] In a separate unsuccessful pretrial motion, Christopher sought to dismiss the access counts as multiplicitous of the possession count in violation of the Double Jeopardy Clause. *See* U.S. Const. amend. V.

grounds, the District Court prevented that line of inquiry and barred statements from Shaun's January 2012 interview with the Philadelphia police.

The parties also jointly proposed jury instructions for the elements of the six counts. The proposed instructions for two of the child pornography counts – those for receipt and possession – did not alert the jury that the same image could not be the basis for both a receipt conviction and a possession conviction. The District Court used the proposed instructions as modified by changes that the parties agreed to on the record. After hearing those instructions and deliberating, the jury returned guilty verdicts on all six counts.

At a subsequent hearing, the District Court sentenced Christopher to concurrent 180-month prison terms for each of the five child pornography convictions and a concurrent 120-month prison term for the SORNA conviction. In addition to that 180-month prison sentence, the District Court imposed a $600 special assessment (at the rate of $100 per count), *see id.* § 3013(a)(2)(A), and a 15-year term of supervised release, *see id.* § 3583(k).

That term of supervised release came with several conditions. One of those was an obligation to disclose financial records, including annual tax returns and monthly statements of income, to the probation officer. Another condition required Christopher to allow monitoring and filtering software on his computer and electronic devices:

> The defendant shall submit to an initial inspection by the U.S. Probation Office and to any examinations during supervision of the defendant's computer and any devices, programs, or application. The defendant shall allow the installation of any hardware or software systems which monitor or filter computer use. The defendant shall abide by the standard conditions of computer monitoring and filtering that will be approved by this Court.

J. 6 (JA8).

Through a notice of appeal, Christopher invoked this Court's appellate jurisdiction to challenge his conviction and sentence. *See* 18 U.S.C. § 3742(a); 28 U.S.C. § 1291.

DISCUSSION

## A. The Challenge to the Denial of the Motion to Suppress

Christopher's lead argument is his most consequential. He contends that the initial search warrant was unconstitutionally overbroad because it authorized examining all data on all of his electronic devices found in the Carpenter Street house. Without the images retrieved from those searches, there would not have been a sufficient basis for the later searches that discovered additional images and led to his five child-pornography charges.

The test for unconstitutional overbreadth involves a comparison between "the scope of the search and seizure authorized by the warrant [and] the ambit of probable cause established by the supporting affidavit." *In re Impounded Case (L. Firm)*, 840 F.2d 196, 200 (3d Cir. 1988). And here, while the initial warrant was broad, the affidavit in support established probable cause for the search of Christopher's electronic devices. The affidavit alleged that surveillance of the Carpenter Street house revealed Christopher entering and exiting the residence, retrieving mail, and emptying the garbage – all indicia that he lived there. And, as the affidavit explained, there was reason to believe that the devices would contain, among other things, location information. In addition, the affidavit emphasized that the sought-after computer-file evidence of a SORNA violation would be concealed, perhaps with innocuous filenames or unusual storage locations. In the presence of those concerns, there was a "sufficient nexus between the evidence to be seized and the alleged offenses," and the warrant was not overbroad. *United States v. Am. Invs. of Pittsburgh, Inc.*, 879 F.2d 1087, 1106 (3d Cir. 1989); *see also United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 149 (3d Cir. 2002) ("An overly broad warrant . . . authorizes the seizure of items as to which there is *no* probable cause." (emphasis added)); *United States v. Bishop*, 910 F.3d 335,

337–38 (7th Cir. 2018) ("A warrant may be thought 'too general' only if some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation. . . . [T]he police did not know where on his phone [the defendant] kept his [files] – and, if he had told them, they would have been fools to believe him . . . .").

## B. The Challenge to the Exclusion of Shaun's 2012 Statements from Evidence

Christopher next contends that the District Court violated his Sixth Amendment right to compulsory process through its evidentiary rulings that prevented the full development of his blame-my-brother defense. In *Government of Virgin Islands v. Mills*, 956 F.2d 443 (3d Cir. 1992), this Court articulated a tripartite standard for claimed violations of the Compulsory Process Clause:

> For [a defendant] to establish that he was convicted in violation of his Sixth Amendment right to compulsory process, he must show: First, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose.

*Id.* at 446; *see also* U.S. Const. amend. VI. According to Christopher, each of those *Mills* elements is met here.

By way of initial benchmark, Christopher seeks a novel application of *Mills*. This Court's precedential opinions have applied the *Mills* test only when a governmental action prevented a person from taking the stand as a witness in favor of a criminal defendant.[2] Likewise, the Supreme Court has not recognized a viable Compulsory Process Clause

---

[2] *See Mills*, 956 F.2d at 446; *see also United States v. Cruz-Jiminez*, 977 F.2d 95, 99–100 (3d Cir. 1992); *Orie v. Sec'y Pa. Dep't of Corr.*, 940 F.3d 845, 854–55 (3d Cir. 2019). *See generally Franklin v. New York*, 145 S. Ct. 831, 832 (2025) (Alito, J., respecting denial of certiorari) ("[T]he Compulsory Process Clause's 'witnesses' are people who must appear in court and take the stand.").

8

claim when a witness has actually testified for a criminal defendant.[3]  And here, Shaun did actually testify as a favorable witness as part of Christopher's defense.

Even assuming *arguendo* that the *Mills* test applies under these circumstances, Christopher cannot satisfy it.  If nothing else, the third *Mills* prong – the "arbitrary" exclusion of evidence or the exclusion of evidence on grounds that are "disproportionate to any legitimate evidentiary or procedural purpose," *id.* – presents an insurmountable obstacle for him.  The *Mills* test does not cast doubt on the legitimacy of the Federal Rules of Evidence.  *Cf. Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).  Hence, the exclusion of testimony based on a valid application of the Federal Rules of Evidence does not satisfy the third *Mills* prong.  And here, the District Court relied on evidentiary rules to bar Christopher from asking Shaun about whether he had ever seen child pornography in the past, and if he denied it, from using Shaun's 2012 statements about noticing child pornography on his computer to impeach him.  Specifically, the purpose of that proposed line of questioning was to pin responsibility on Shaun for the child pornography found on Christopher's devices seized and searched from the Carpenter Street house.  But the District Court reasoned that it was too speculative that Shaun's response to that line of inquiry would make it more likely that "Shaun went upstairs into his brother's room, found the device passwords, logged into the devices using his brother's logins, and downloaded or accessed child pornography, all before he even moved into the house."  Order 3 n.1 (D.C. ECF No. 100) (Apr. 2, 2024) (JA698).  Because evidence must be relevant to be

---

[3] *Compare United States v. Nobles*, 422 U.S. 225, 241 (1975) (rejecting a Compulsory Process Clause challenge when the challenged court order did not completely bar the defense witness's testimony), *with Washington v. Texas*, 388 U.S. 14, 14–15, 23 (1967) (evaluating a Compulsory Process Clause challenge based on a court order or governmental action that prevented a witness from being called by a criminal defendant), *and United States v. Valenzuela-Bernal*, 458 U.S. 858, 860 (1982) (same), *and Taylor v. Illinois*, 484 U.S. 400, 402 (1988) (same).

9

admissible, *see* Fed. R. Evid. 402, the District Court's exclusion of that line of questioning was not an abuse of discretion, *see generally Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 253 (3d Cir. 2008) (explaining that, in general, evidentiary rulings are reviewed for an abuse of discretion). And as a ruling consistent with the Federal Rules of Evidence, the denial of this line of questioning does not violate the third *Mills* prong.

## C. The Two Double-Jeopardy Challenges

Christoper makes two double-jeopardy arguments that he did not raise in the District Court. *See* U.S. Const. amend. V.

He argues that the District Court erred by not instructing the jury that he could not be convicted of both *receipt* (Count One) and *possession* (Count Two) of the same child pornography. *See* 18 U.S.C. § 2252(a)(2), (a)(4)(B). But Christopher and the prosecution jointly submitted the proposed jury instructions to the District Court, and under the invited error doctrine, he cannot successfully challenge instructions for which he advocated. *See United States v. Perrin*, 149 F.4th 267, 285 (3d Cir. 2025).

Christopher also asserts, for the first time on appeal,[4] that principles of double jeopardy prevent his convictions for both *possession* of (Count Two) and *access* with intent to view (Counts Three through Five) the same child pornography. *See* 18 U.S.C. § 2252(a)(4)(B). He received concurrent 180-month sentences for each of those child pornography counts, so even if he were successful, his prison sentence would not change,

---

[4] In an uplifting display of candor, counsel for both parties have taken contrary positions on whether this challenge was raised in the District Court, and both positions cut against the more favorable standard of review for their client. Christopher's attorney argues that the issue was not preserved while the prosecution argues that it was. The record reveals that the issue was not preserved because Christopher does not appeal his pretrial motion challenging the multiplicity of the *indictment*, but raises a new challenge on appeal to the multiplicity of his *convictions* based on the evidence presented at trial. Hence, the plain-error standard governs this challenge. *See* Fed. R. Crim. P. 52(b).

but he would be spared the $100 special assessment for any duplicative convictions. *See id.* § 3013(a)(2)(A).

To show a double jeopardy violation for multiple punishments, the charged offenses must be the same in law and in fact. *See United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013) ("[F]or multiple punishments to constitute a double jeopardy violation, the multiple charged offenses must be the same in law *and* in fact."); *see also United States v. Rigas*, 605 F.3d 194, 204 (3d Cir. 2010) (en banc). While it may be that this Court's precedent supports the view that possession and access to the same child pornography were the same in law, *cf. Finley*, 726 F.3d at 496 (holding that "a natural reading of § 2252(a)(2)" demonstrates that "the provision creates one offense in law that can be proven in alternative ways"), neither party has addressed whether those holdings remain unaffected by the Supreme Court's subsequent explanation of the differences between elements and means in *Descamps v. United States*, 570 U.S. 254 (2013). *See id.* at 271–72; *see also* Jessica A. Roth, *The Divisibility of Crime*, 64 Duke L.J. Online 95, 98, 114–15, 116–18 (2015) (positing that *Descamps*'s introduction of a "new analytic term" – referred to as 'alternative elements' – "may prompt a critical reevaluation of the doctrine governing claims under the Double Jeopardy Clause"). Yet plain-error review requires (i) an error that (ii) is plain; (iii) affects substantial rights, and (iv) "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). And under the second prong, without a plain error – one "clear under current law," *Olano*, 507 U.S. at 734 – this challenge fails.

## D. The Challenges to the Financial-Disclosure and Inspection-and-Monitoring Supervised-Release Conditions

Christopher's sentence included a long period of supervised release – 15 years. On appeal, he does not dispute its duration but rather two of the conditions that will endure for its full term. First, he challenges the requirement that he "provide truthful monthly statements of his income" and "full disclosure of his financial records to include yearly income tax returns upon the request of the U.S. Probation Office." J. 6 (JA8). Second, he contests the requirement that allows a probation officer to inspect his "computer and any devices, programs, or application" and compels "the installation of any hardware or software systems which monitor or filter computer use." *Id.* (JA8). He raises these challenges for the first time on appeal, so they are subject to the plain-error standard of review. *See* Fed. R. Crim. P. 52(b); *see also Molina-Martinez*, 578 U.S. at 194.

In challenging the financial-disclosure condition, Christopher argues that the release of his finances, tax returns, and monthly income to his probation officer lacks a basis in the record. But there is a statutorily recognized need to "protect the public from further crimes of the defendant," which must be considered in setting discretionary conditions on supervised release, 18 U.S.C. § 3553(a)(2)(C), *see id.* § 3583(c), and Christopher incurred an uncommonly high amount of expenses for an unemployed person when he violated SORNA's reporting requirements: he simultaneously rented multiple properties and stayed in a hotel for over six months. Yet, to prevail on plain-error review of a discretionary condition on supervised release, Christopher must establish, among other things, an abuse of discretion that is plain. *See United States v. Adair*, 38 F.4th 341, 356 (3d Cir. 2022) (holding that "if a preserved argument would be reviewed under a more deferential standard, such as clear error or abuse of discretion, then the more deferential standard would apply to the first prong of the plain-error standard for an unpreserved argument");

12

*see also United States v. Santos Diaz*, 66 F.4th 435, 447–48 (3d Cir. 2023) (reviewing challenges to supervised-release conditions for abuse of discretion). And on this record, it is not obvious that the District Court abused its discretion in setting the financial-disclosure condition. His challenge therefore fails.

Christopher also contests the inspection-and-monitoring condition on several grounds. He contends that without a reasonable-suspicion prerequisite, it exceeds the bounds of a court's statutory authority. In addition to the general standards that Congress imposed on district courts for setting conditions on supervised release, it also provided an additional, SORNA-specific standard. *See* 18 U.S.C. § 3583(d). Under that standard, it is permissible for a district court to impose a condition on the supervised release of persons subject to SORNA that their electronic devices be searched by law enforcement or a probation officer upon "reasonable suspicion" of wrongdoing, or by a probation officer "in the lawful discharge of the officer's supervision functions":

> The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and *by any probation officer in the lawful discharge of the officer's supervision functions*.

*Id.* (emphasis added). Thus, with the last clause of that statutory subsection permitting suspicionless searches, for Christopher's challenge to succeed, he must establish that the inspection and monitoring would be outside of the lawful discharge of the supervisory functions of his probation officer, and he does not make that showing.[5]

---

[5] As a variation on a theme, Christopher also argues that because a condition of supervised release must be "consistent with any pertinent policy statements issued by the Sentencing Commission," 18 U.S.C. § 3583(d)(3), the condition must satisfy a policy statement containing a reasonable-suspicion requirement for warrantless searches. But, mirroring the

On plain-error review, Christopher's Fourth Amendment challenges to the inspection-monitoring conditions fall short as well.  The Fourth Amendment has some, albeit limited, applicability to persons on supervised release, *see United States v. Moore*, 111 F.4th 266, 269 n.2 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 2849 (2025), but there is no on-point binding precedent holding that device inspection and electronic monitoring of SORNA registrants on supervised release offends those reduced protections, *cf. Samson v. California*, 547 U.S. 843, 857 (2006) (upholding "a suspicionless search of a parolee" that was authorized in the parolee's parole conditions over a Fourth Amendment challenge).  And plain-error review is not the mechanism for vindicating novel legal theories.  *Cf. United States v. Abrams*, 165 F.4th 784, 806 (3d Cir. 2026); *United States v. Jabateh*, 974 F.3d 281, 299 (3d Cir. 2020).

Christopher also argues for the first time on appeal that the inspection-and-monitoring condition is void for vagueness because it is unclear whether the phrase 'computer and any devices, programs, or application' covers his smartphone.  It does.  *See United States v. Wise*, 134 F.4th 745, 749 (3d Cir. 2025) ("The dictionary definitions of 'computer' unambiguously include smartphones: Smartphones store and communicate information and host software in the form of apps, and people frequently use them to access the internet.  These definitions are enough to solve this puzzle.  And they are consistent with common sense.").  Thus, the condition neither "forbids [n]or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application," and it is not void for vagueness.  *United States v.*

statutory provision in § 3583(d), that Guideline also allows warrantless searches "by any probation officer in the lawful discharge of the officer's supervisory responsibilities," U.S.S.G. § 5D1.3(d)(7)(C) (U.S. Sent'g Comm'n 2023), and without a showing that the inspection and monitoring would be outside of the lawful discharge of the supervisory functions of his probation officer, this contention is similarly meritless.

*Maloney*, 513 F.3d 350, 357 (3d Cir. 2008) (quoting *United States v. Lee*, 315 F.3d 206, 214 (3d Cir. 2003)).

## CONCLUSION

For the foregoing reasons, we will affirm the judgment and sentence of the District Court.